# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

NO. 03-04-00645-CR
NO. 03-04-00646-CR
NO. 03-04-00647-CR

**Rigoberto Jaimes, Appellant**

**v.**

**The State of Texas, Appellee**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 403RD JUDICIAL DISTRICT
## NOS. 2024953, 3022693 & 3022694, HONORABLE BRENDA KENNEDY, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

In this appeal, we review Rigoberto Jaimes's convictions on one count of aggravated assault against a public servant and four counts of aggravated robbery. In two points of error, appellant contends that there was insufficient evidence to support his conviction for aggravated assault, and that the trial court erred in failing to quash the aggravated robbery indictments. Because there was sufficient evidence and the trial court did not err in failing to quash the aggravated robbery indictments, we overrule appellant's two points of error and affirm the trial court's judgments.

## FACTUAL AND PROCEDURAL BACKGROUND

On the afternoon of December 20, 2002, the appellant, Rigoberto Jaimes, his brother Guillermo, and a friend, Dimas Munoz, drove to VIPA Automotive in north Austin. While Munoz remained in the vehicle, a black Nissan Sentra, appellant and Guillermo entered the shop. Once inside, the two approached the counter and informed the employee, Augustine Gonzales, that they wished to make a car payment. As Gonzales bent down to retrieve the receipt book from underneath the counter, appellant drew his gun, pointed it at Gonzales's head, and demanded money.

Appellant proceeded to force Gonzales, at gunpoint, into the back office of the shop, whereupon they encountered another employee, Rudy Palma. While appellant threatened the two men with the gun, Guillermo drew a knife, held it against Palma, and demanded money from him as well. Palma, who had just picked up $2000 from the office, handed over that amount, along with his cellular phone and an additional $160 he had in his pockets. Gonzales also surrendered his wallet to the two men. Not satisfied, appellant and Guillermo insisted they be told the location of the cash box. Palma and Gonzales repeatedly informed them that no such box existed.

At this point another employee at the shop, Jeremy Rodriguez, opened the door to this back office, unaware of what was transpiring. As the door opened, appellant pointed his gun at Rodriguez and ordered him inside. Appellant then took Rodriguez's wallet and snatched a gold chain from Rodriguez's neck. Appellant and Guillermo then had all three men lay on the floor of the office, and appellant once again insisted that they tell him where the cash box was kept. While the three men continued to deny the existence of such a box, Guillermo urged his brother to leave. Appellant eventually acquiesced, but before leaving the two brothers pulled the facsimile and

2

telephone cords from the wall, threw the machines to the floor, and threatened to come back and shoot anyone who called the police. They then exited the shop, got into their waiting vehicle, and fled the scene.

Despite the threats, the employees reported the incident to the police, who shortly thereafter identified a vehicle matching the employees' description on the frontage road of Interstate 35. As the vehicle, driven by Munoz, entered the interstate, the three patrol units following the vehicle turned on their overhead lights to initiate a stop. Munoz immediately swerved across three lanes of traffic and came to an abrupt stop against the retaining wall separating the interstate's northbound and southbound lanes. Appellant and Munoz then rushed out of the car, leapt over the retaining wall, and ran across the interstate, through rush hour traffic, pursued by the police officers.

Although Munoz was able to escape into a wooded area nearby, appellant ran towards the frontage road with his weapon drawn and attempted to commandeer a passing vehicle. His first attempt was unsuccessful, but the second vehicle came to a stop and appellant ordered the driver of the vehicle, Michael Glenny, out at gunpoint. As Glenny dove from the vehicle onto the ground, Travis County Sheriff's Deputy Keith Kinnard, who had been pursuing appellant, commanded appellant to freeze. Disobeying the command, appellant entered the vehicle, turned, and pointed his revolver at Deputy Kinnard. Fearing for his life, Deputy Kinnard fired at appellant, and the two exchanged gunfire until appellant had expended his six rounds and dropped his revolver. Deputy Kinnard then arrested appellant, who was subsequently airlifted to a hospital with minor injuries.

At trial, appellant faced five criminal counts: three counts of aggravated robbery stemming from the events at VIPA Automotive; one count of aggravated robbery relating to the

3

commandeering of Michael Glenny's vehicle; and one count of aggravated assault on a public servant for pointing and shooting a gun at a police officer. The jury found appellant guilty on all five counts and the court assessed punishment at 99 years for the aggravated assault against a public servant, and 50 years on each count of aggravated robbery.

## ANALYSIS

On appeal, appellant asserts two points of error. First, he contends that the evidence was legally insufficient to support his conviction for aggravated assault. Specifically, he maintains that there was insufficient evidence adduced at trial for the jury to find that Deputy Kinnard was actually threatened by appellant's act of shooting. In his second point of error, appellant argues that the trial court erred by failing to quash the aggravated robbery indictments. He asserts that these indictments were incomplete because they did not include the names of the subjects of the alleged thefts.

### Legal Sufficiency of the Evidence

Appellant's legal sufficiency challenge pertains to his conviction for aggravated assault under penal code section 22.02(a)(2). Tex. Pen. Code Ann. § 22.02(a)(2) (West Supp. 2005). According to this statute, "[a] person commits an offense if the person commits assault as defined in § 22.01 and the person . . . uses or exhibits a deadly weapon during the commission of the assault." *Id*. The elements of assault contained in section 22.01(a)(2) specify that the offense is committed when a person "intentionally or knowingly threatens another with imminent bodily injury. . . ." *Id*. § 22.01(a)(2). Furthermore, section 22.02(b)(2)(B) indicates that the punishment

4

for aggravated assault will be increased from a second degree felony to a first degree felony when the offense is committed "against a person the actor knows is a public servant while the public servant is lawfully discharging an official duty. . . ." *Id*. § 22.02(b)(2)(B).

Appellant argues that there was insufficient evidence for a jury to find him guilty of aggravated assault based on the language of the State's indictment and the evidence introduced at trial. The indictment stated:

> [T]hat RIGOBERTO PEREZ JAIMES, on or about the 20th day of December A.D. 2002, and before the presentment of this indictment, in the County of Travis, and State of Texas, did then and there intentionally and knowingly threaten to cause imminent bodily injury to Keith Kinnard with a deadly weapon, to-wit: a firearm, by shooting at Keith Kinnard, and the said Keith Kinnard was then and there a peace officer in the lawful discharge of official duty, and RIGOBERTO PEREZ JAIMES knew and had been informed that Keith Kinnard was a peace officer.

Although appellant acknowledges that he may have threatened Deputy Kinnard by pointing his revolver at him, appellant contends that there was insufficient evidence for a jury to find that his act of shooting threatened Deputy Kinnard, as alleged in the indictment.

When analyzing a challenge to the legal sufficiency of the evidence in a criminal conviction, we view the evidence in the light most favorable to the prosecution and determine whether, based on the evidence and the inferences flowing from that evidence, a rational trier of fact could have found the defendant guilty of all elements of the offense beyond a reasonable doubt. *Lane v. State*, 151 S.W.3d 188, 191-92 (Tex. Crim. App. 2004). This well-known standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, weigh the evidence, and draw reasonable inferences from basic to ultimate facts. *Jackson v. Virginia*, 443 U.S.

307, 319 (1979). We note that this review of the evidence for legal sufficiency does not allow us to substitute our own judgment for that of the jury, nor are we permitted to re-weigh the evidence. *King v. State*, 29 S.W.3d 556, 562 (Tex. Crim. App. 2000). Rather, our function is to determine if the implicit and explicit findings of the trier of fact were rational by viewing all of the evidence admitted at trial in the light most favorable to the verdict. *Adelman v. State*, 828 S.W.2d 418, 422 (Tex. Crim. App. 1992). We must assume that the fact-finder resolved conflicts in the evidence, including conflicting inferences, in favor of the verdict. *Matchett v. State*, 941 S.W.2d 922, 936 (Tex. Crim. App. 1996).

Appellant relies primarily on the testimony of Deputy Kinnard to demonstrate that there was insufficient evidence to support his conviction for aggravated assault against a public servant. When questioned by the prosecutor and the defense attorney at trial as to whether he knew he was being fired at, Deputy Kinnard repeatedly acknowledged that he was unsure whether appellant was firing his weapon at the time of the incident. For example, at various stages of his testimony, Deputy Kinnard testified as follows:

> [State:]        All right. Is he shooting at you?
>
> [Deputy Kinnard:]  I don't know for sure. All I know is a gun is pointed at me, and I'm still firing.
>
> . . . .
>
> [State:]        During the time you shot at the suspect, do you ever remember him actually shooting at you?
>
> [Deputy Kinnard:]  I just wasn't for sure if he was shooting at—all I know, the gun is pointed at me, and there was a lot of glass flying. And I didn't know if that was all mine or something coming back at me. . . .

6

. . . .

[Defense Attorney:] You were asked about him unloading the weapon at you. Did you hear or see him firing at you?

[Deputy Kinnard:] I was not for sure whether he was firing or not.

Appellant contends that Deputy Kinnard's testimony shows that he knew appellant pointed a gun at him, but was unaware that appellant was shooting at him. Instead, Deputy Kinnard's testimony merely reveals that he was *uncertain* whether appellant was in fact firing at him. This uncertainty was a factor the jury could take into account and resolve in light of other evidence set forth at the trial. And there was other evidence indicating that Deputy Kinnard believed appellant was firing at him. Deputy Kinnard saw glass flying from the windshield of the vehicle, which suggested he was being fired at. When the shooting began, Deputy Kinnard testified that he tried to minimize his body's exposure to appellant's weapon because he lacked any cover to stand behind. Perhaps most telling, after the shooting had ended and he had pulled appellant from the vehicle and handcuffed him, Deputy Kinnard testified that he checked his body to see if he had been shot. All of this suggests that Deputy Kinnard believed he was being fired at by appellant.

Moreover, the jury also heard testimony from other witnesses about the events of that afternoon. Michael Glenny, the driver of the vehicle that appellant commandeered, stated at trial that immediately after diving from his car he felt glass land on his head, and he heard the sounds of two different guns firing. Deputy Gray, who was on the highway arresting appellant's brother, testified that he also heard the gunshots. Deputy Callentine, who pursued the fleeing suspects along with Deputy Kinnard, testified regarding the exchange of gunfire and the exploding glass from the car's

7

windshield. Finally, Michael Henderson, who witnessed this entire episode from his car on Interstate 35, testified that he heard appellant yell at Deputy Kinnard, and that he saw both the muzzle flash and recoil of the revolver as appellant fired at Deputy Kinnard, as well as the shattering of the windshield's glass.

Viewing this evidence, as well as other evidence introduced at trial, in the light most favorable to the prosecution, we hold that a rational trier of fact could find appellant guilty of all the elements of the crime beyond a reasonable doubt. *See Lane v. State*, 151 S.W.3d at 191-92. Accordingly, we overrule appellant's first point of error.

**Motion to Quash the Aggravated Robbery Indictments**

The second point of error pertains to the aggravated robbery indictments. Prior to trial, appellant filed motions to quash these indictments on various grounds. Although these motions were denied by the trial court, the substance of the motions compelled the State to amend their indictments to include the manner and means by which the complainants were put in fear of imminent bodily injury and death. Nevertheless, appellant asserts that the trial court erred by refusing to quash the indictments because the indictments failed to specify the names of the owners of the property involved in the thefts.

When we are asked to address the adequacy of an indictment, the trial court's ruling on a motion to quash is subject to *de novo* review. *State v. Moff*, 154 S.W.3d 599, 601 (Tex. Crim. App. 2004); *Yanes v. State*, 149 S.W.3d 708, 709 (Tex. App.—Austin 2004, pet ref'd). This is because the amount of deference given to a trial court's ruling depends on which "judicial actor" is better positioned to decide the issue. *Moff*, 154 S.W.3d at 601. Thus, if a ruling must take into

8

account the credibility and demeanor of witnesses, then the trial court is better positioned to make that decision, and consequently its decision is entitled to deference. *Id*. On the other hand, when, as here, the ruling involves a question of law that does not include the consideration of witness testimony or credibility, the appellate court is as well positioned to decide the issue as the trial court. *Id*.

To determine the adequacy of the indictment, we utilize a two-step process. First, we ask whether the indictment failed to convey some requisite item of notice. *Adams v. State*, 707 S.W.2d 900, 903 (Tex. Crim. App. 1986). If sufficient notice was given, our inquiry ends. *Id*. If sufficient notice was not given, then under the second step we must determine whether, and to what extent, this impacted the defendant's ability to prepare a defense. *Id*. Because we hold that the indictment provided sufficient notice, we do not reach this second step.

To satisfy the requirement of sufficient notice, an indictment must on its face contain allegations of the facts necessary to demonstrate that the offense was committed, bar subsequent prosecution for the same offense, and give the defendant notice of the precise offense with which he has been charged. *DeVaughn v. State*, 749 S.W.2d 62, 67 (Tex. Crim. App. 1988). A motion to quash should only be granted if the language concerning a defendant's conduct is so vague or indefinite as to deny him effective notice of the acts he allegedly committed. *Id*. Generally, an indictment tracking the statutory language of a criminal offense, will, in most instances, possess sufficient specificity to provide the defendant notice of a charged offense. *State v. Edmond*, 933 S.W.2d 120, 128 (Tex. Crim. App. 1996).

The indictments for aggravated robbery tracked the statutory language of penal code sections 29.02 and 29.03. Tex. Pen. Code Ann. §§ 29.02, .03 (West 2003). They set forth the names of the individuals that appellant intentionally and knowingly threatened with imminent bodily injury and death, including Michael Glenny, Augustine Gonzales, Rudy Palma, and Jeremy Rodriguez. They also specified the manner and means by which these threats were carried out—by wielding a gun and knife. As written, these indictments informed appellant of the offenses charged against him, were specific enough to bar any subsequent prosecution for the same offense, and informed him of the precise charges that he would have to defend at trial. We hold that the indictments provided appellant with adequate notice.

Appellant contends that these indictments were still defective because they failed to include the names of the property owners involved in the theft. This argument is without merit. In an indictment charging a defendant with aggravated robbery, the underlying elements of theft do not have to be alleged. *Hightower v. State*, 629 S.W.2d 920, 922-23 (Tex. Crim. App. 1981); *Earl v. State*, 514 S.W.2d 273, 274 (Tex. Crim. App. 1974). As the *Hightower* decision makes clear, aggravated robbery is a form of assault, not theft. *Hightower*, 629 S.W.2d at 922. Thus, the court in *Hightower*, confronted with a similar motion to quash an indictment for failing to allege the name of the property owner, held that the indictment gave the defendant sufficient notice of the offense charged against him without naming the property owner. *Id.* at 923. We therefore overrule appellant's second point of error.

10

## CONCLUSION

Because there was sufficient evidence for the jury to find appellant guilty of aggravated assault, and because the aggravated robbery indictments provided sufficient notice without naming the property owners of the alleged thefts, we overrule appellant's two points of error and affirm the judgments of the trial court.

_____

Jan P. Patterson, Justice

Before Chief Justice Law, Justices Patterson and Puryear

Affirmed

Filed:   December 8, 2005

Do Not Publish