Opinion issued February 16, 2006



     











In The
Court of Appeals
For The
First District of Texas




NO. 01–04–00936–CR




JERRI NANN REUTER, Appellant

V.

THE STATE OF TEXAS, Appellee




On Appeal from the 351st District Court
Harris County, Texas
Trial Court Cause No. 988857



 
MEMORANDUM OPINION

          Jerri Nann Reuter, appellant, was charged with the felony offense of aggregate
theft of more than $200,000. Tex. Pen. Code Ann. § 31.09 (Vernon 2003),
§ 31.03(a), (e)(7) (Vernon Supp. 2005). The jury found her guilty and assessed
punishment at a fine of $10,000 and 52 years’ confinement in prison.
          In ten points of error, appellant argues that (1) the evidence was legally
insufficient to support a conviction, (2) the evidence was factually insufficient to
support a conviction, (3) certain evidence had not been properly authenticated, (4) the
trial court erred in quashing appellant’s subpoena duces tecum, (5) the trial court
erred in denying appellant’s motions for continuance, (6) the trial court erred in
refusing to allow appellant to cross-examine the complainant about a check written
to the Internal Revenue Service, (7) evidence of an extraneous offense was
improperly admitted, (8) a witness was erroneously allowed to testify without prior
notice to appellant, (9) the trial court erred in refusing to include an instruction to the
jury on a lesser-included offense, and (10) the trial court erred in denying appellant’s
motion for mistrial.
          We affirm.
Background
           John Eckley, complainant, owned a number of companies that centered around
the construction and management of Kings Crossing Town Center, a multi-building
shopping and office center located in Kingwood, Texas. Around September of 2000,
Eckley hired appellant to help run the office. Appellant’s responsibilities included
handling incoming rent checks, receiving incoming bills, preparing checks for
Eckley’s signature, and managing the bookkeeping.
          In June of 2003, David Hannah, Eckley’s attorney, received notice that Eckley
was behind on his mortgage payments on the Town Center property. Appellant told
Hannah that she was working with someone at the lender’s office to straighten out a
problem with the application of the payments. Later, appellant told Hannah that the
situation had been resolved.
          In August of 2003, Hannah received notice that Town Center was posted for
foreclosure. Hannah talked to appellant, and she faxed bank statements and other
documents purporting to show that the payments had been made. Hannah repeatedly
tried to talk to Eckley, but appellant kept insisting that Eckley was in a business
meeting and refused to be disturbed. Finally, Hannah called Eckley on Eckley’s cell
phone. Eckley answered, knowing nothing of the trouble and denying ever having
been in a meeting.
          In an attempt to understand the discrepancies, Eckley contacted Geraldine
Castor-Brooks. Castor-Brooks was Eckley’s accountant and had helped appellant set
up software on the office computer to maintain financial records. Appellant had told
Eckley that Castor-Brooks had some of the financial documents that they needed. 
When Eckley talked to Castor-Brooks, she said that she did not have the documents
and that appellant had told her many months earlier that her services were no longer
needed. When Castor-Brooks showed up at the office to talk to Eckley, appellant told
her that Eckley was very upset and that Castor-Brooks should go away until he
calmed down.
          Finally, Eckley, Hannah, and Castor-Brooks sorted through the documents that
they found to discover what had happened. Many of the documents appellant had
faxed to show that the mortgage payments had been made had been altered. The true
bank and credit card statements showed that the payments had not been made. 
Instead, new lines of credit had been opened, Eckley’s name had been forged on
unauthorized checks, and significant amounts of money had been stolen. Much of the
funds had been deposited into appellant’s bank account and the bank account of her
boyfriend, Alan James. The rest had been spent on unauthorized purchases, including
purchases from catalogs that had been mailed to appellant. Among the things
purchased were “jewelry from stores in Kingwood, jewelry from stores outside of
Kingwood, jewelry from catalog sales; matresses, a 1,000-dollar mattress; season
tickets to the football team on their inaugural season; books, cookbooks, history
books; candles; [and] Republic of Tea catalog sales.” It was determined that over
$300,000 had been stolen. Eckley notified the police, and the police charged
appellant with first-degree aggregate theft.
Legal Sufficiency
          In her second point of error, appellant argues that the evidence was legally
insufficient to support a conviction.
A.     Standard of Review
          A legal-sufficiency challenge requires us to determine whether, after viewing
the evidence in the light most favorable to the verdict, any rational trier of fact could
have found the essential elements of the offense beyond a reasonable doubt. Johnson
v. State, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000); Howley v. State, 943 S.W.2d 152,
155 (Tex. App.—Houston [1st Dist.] 1997, no pet.). Although our analysis considers
all of the evidence presented at trial, we may not re-weigh the evidence and substitute
our judgment for that of the fact finder. King v. State, 29 S.W.3d 556, 562 (Tex.
Crim. App. 2000).
B.      Analysis
          “A person commits an offense if he unlawfully appropriates property with
intent to deprive the owner of property.” Tex. Pen. Code Ann. § 31.03(a). 
“Appropriation of property is unlawful if it is without the owner’s effective consent.” 
Tex. Pen. Code Ann. § 31.03(b)(1).
          Appellant presents two arguments as to why the evidence was legally
insufficient to support a conviction. First, she argues that there was a fatal variance
between the allegations in the indictment and the proof at trial. Second, she argues
that there was no evidence directly linking her to the thefts.
          1.       Variance Between Indictment and Proof at Trial
          In the indictment, appellant was charged with stealing money from Eckley. At
trial, the State presented evidence that some of the stolen money was the property of
different entities, namely Kings Crossing Town Center Corporation, Black Mesa
Construction Company, and Town Center Executive Suites. Appellant argues that
this creates a fatal variance between the indictment and the proof at trial.
          A variance occurs if a discrepancy exists between the allegation in the
indictment and the proof presented at trial. Gollihar v. State, 46 S.W.3d 243, 246
(Tex. Crim. App. 2001). In such cases, the State has proven the defendant guilty of
a crime, but proved the commission of the crime in a manner that varies from the
allegations in the indictment. Such a variance may render the evidence insufficient
to sustain the conviction. Id. at 247. Only a material variance, however, renders the
evidence insufficient and requires reversal. Id. at 257.
          As the State points out, the Texas Penal Code’s definition of “owner” includes
a person who has “a greater right of possession of the property than the actor.” Tex.
Pen. Code Ann. § 1.07(a)(35)(A) (Vernon Supp. 2005). “Possession” is defined as
“actual care, custody, control, or management.” Tex. Pen. Code Ann. § 1.07(a)(39)
(Vernon Supp. 2005). Testimony established that Eckley owned all of the entities
that are involved in the alleged variance. Appellant did not own any interest in these
companies. Therefore, Eckley had a greater right of possession in the money and, for
the purposes of this trial, was considered an owner of the money.
          We hold that there was no fatal variance between the indictment and the proof
offered at trial.
          2.       Direct Evidence
          Appellant argues that because there was no direct evidence—such as
fingerprints, expert handwriting analysis, or an admission—linking her to the crime,
the evidence was legally insufficient.
          “Circumstantial evidence, by itself, may be enough to support the jury’s
verdict.” Kutzner v. State, 994 S.W.2d 180, 184 (Tex. Crim. App. 1999). Lack of
direct evidence does not create legal insufficiency. See id. (holding that
circumstantial evidence can be enough to support a jury’s verdict). The standard of
review for legal sufficiency of the evidence is the same for circumstantial evidence
as it is for direct evidence. King, 29 S.W.3d at 565.
          The State presented ample circumstantial evidence to establish appellant as the
perpetrator of the crime. Appellant was working for Eckley during the period of time
in which the theft occurred. Eckley testified that he did not authorize the
transactions. Multiple parties, including Eckley, testified that appellant had the most
access to Eckley’s financial information and bills, and appellant was responsible for
paying the bills and keeping financial records.
          Numerous unauthorized checks, forged checks, and cash advances were drawn
from Eckley’s accounts and deposited into appellant’s account. Appellant’s email
address was used as a contact source for fraudulently opened credit accounts. 
Unauthorized purchases on Eckley’s accounts matched items in catalogs that were
addressed to appellant at the office.
          Finally, when evidence of the theft began to emerge, appellant took steps 
suggesting that she was aware of the theft and trying to conceal it. When Hannah and
Castor-Brooks attempted to contact Eckley, appellant tried to prevent them from
talking to him. When Hannah discovered that Town Center was scheduled for
foreclosure, appellant told Hannah that she had taken care of the problem when she
had not. When Hannah attempted to stop the foreclosure, appellant faxed altered
bank statements.
          Viewing the evidence in the light most favorable to the verdict, we hold that
the evidence is legally sufficient to support appellant’s conviction.
          We overrule appellant’s second point of error.

Factual Sufficiency
          In her first point of error, appellant argues that the evidence was factually
insufficient to support a conviction.
A.     Standard of Review
          In a factual-sufficiency review, we view all of the evidence in a neutral light,
and we will set the verdict aside only if the evidence is so weak that the verdict is
clearly wrong and manifestly unjust, or the contrary evidence is so strong that the
standard of proof beyond a reasonable doubt could not have been met. Escamilla v.
State, 143 S.W.3d 814, 817 (Tex. Crim. App. 2004) (citing Zuniga v. State, 144
S.W.3d 477, 481 (Tex. Crim. App. 2004)). Our evaluation may not intrude upon the
fact-finder’s role as the sole judge of the weight and credibility accorded any
witness’s testimony. Cain v. State, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997). 
The fact-finder alone determines what weight to place on contradictory testimonial
evidence, as it depends on the fact-finder’s evaluation of credibility and demeanor. 
Id. at 408. In conducting a factual-sufficiency review, we must discuss the evidence
that, according to appellant, most undermines the jury’s verdict. See Sims v. State,
99 S.W.3d 600, 603 (Tex. Crim. App. 2003).
B.      Analysis
          Appellant’s defense, at trial and on appeal, appears to focus on the credibility
of the witnesses and the level of proof identifying her as the perpetrator of the crime. 
We therefore review the record to determine whether the evidence supporting the
verdict is too weak to support a finding of guilt beyond a reasonable doubt.


 Zuniga,
144 S.W.3d at 484.
          Appellant again makes the argument in this point of error that there was no
evidence directly linking her to the crime. Direct evidence is not required for the
jury’s verdict to be factually sufficient. See Kutzner, 994 S.W.2d at 184. The
circumstantial evidence we reviewed in appellant’s legal-sufficiency point of error
is sufficient to satisfy a factual-sufficiency challenge.
          Appellant argues that the State’s evidence was too weak by emphasizing some
evidence challenging the reliability of Eckley. To counter Eckley’s statement that he
carefully monitored the checks signed by him, appellant presented a check for
$18,121.54 signed by him 15 months earlier. Upon questioning, Eckley was unable
to recall whether this truly was a check signed by him or if it was one of the forged
checks.
          Part of the State’s evidence on appellant’s guilt was that appellant’s boyfriend,
Alan Scott James, used a credit card billed to Eckley’s business, to partially pay for
jewelry costing over $10,000. To counter that these payments were unauthorized,
appellant points to an admission by Eckley that James had been allowed to use the
credit card to buy groceries for the company on several occasions.
          The jury is the exclusive judge of the credibility of the witnesses and the
weight to give their testimony. Stewart v. State, 137 S.W.3d 184, 187 (Tex.
App.—Houston [1st Dist.] 2004, pet. ref’d). The credibility issues that appellant
discusses do not rise to the level as to make the verdict manifestly unjust. See
Zuniga, 144 S.W.3d at 481.
          Finally, appellant argues that the evidence was too weak because there are
other theories that the evidence could support other than implicating her in the crime. 
Primarily, appellant argues that some of the witnesses admitted that it was possible
for appellant to have been set up, for example, “by someone leaving a ‘smoking gun’
such as a fraudulent document that was not torn up or crumpled in any way.”
          An alternate theory of causation or explanation of the facts does not create
factual insufficiency. Goodman v. State, 66 S.W.3d 283, 287 (Tex. Crim. App. 2001).
It is for the jury, not a reviewing court, to accept or reject competing theories of
causation. Id. 
          We hold that the evidence was factually sufficient to support appellant’s
conviction. We overrule appellant’s first point of error.
Authentication of Evidence
          In her fifth point of error, appellant argues that the trial court erred in admitting
into evidence documents that had not been properly authenticated.
A.      Standard of Review
          We review the trial court’s determination of the admissibility of evidence under
an abuse-of-discretion standard. Angleton v. State, 971 S.W.2d 65, 67 (Tex. Crim.
App. 1998); Jordan-Maier v. State, 792 S.W.2d 188, 190 (Tex. App.—Houston [1st
Dist.] 1990, pet. ref’d).
B.      Analysis
          Appellant challenges the admission of nine documents into the record, State’s
Exhibits 1, 2, 4, 5, 6, 7, 8, 10, and 13. The first seven of the exhibits were sent to
testifying witnesses by facsimile. Appellant argues that because the witnesses did not
observe the sending party actually faxing the documents, the documents were not
properly authenticated. State’s Exhibit 10 was an altered bank statement. Appellant
challenged this on the ground that the witness testifying to its authenticity did not
witness the alteration. State’s Exhibit 13 was a bank statement received by Eckley. 
Appellant challenged this on the ground that it was not an exception to the hearsay
rule and was not qualified under the Business Records Act.
          The objection at trial to State’s Exhibit 13 does not comport with appellant’s
objection on appeal. The point of error on appeal must comport with the specific
objection made at trial. Wilson v. State, 71 S.W.3d 346, 349 (Tex. Crim. App. 2002);
Tex. R. App. P. 33.1(a)(1)(A). An objection stating one legal basis may not be used
to support a different legal theory on appeal. Rezac v. State, 782 S.W.2d 869, 870
(Tex. Crim. App. 1990). We hold that appellant’s objection on appeal to State’s
Exhibit 13 was not properly preserved.
           Evidence is authenticated when sufficient evidence is presented to support a
finding that the matter in question is what its proponent claims. Tex. R. Evid. 901(a). 
Hannah testified that State’s Exhibits 1, 2, 4, 5, 7, and 8 were sent from appellant to
him. Appellant challenges these on the basis that Hannah did not witness appellant
send the facsimiles. Therefore, Hannah could not be certain that these actually did
come from appellant, undermining the authentication of the documents.
          State’s Exhibits 7 and 8 were documents sent from appellant to Hannah in the
regular course of business before any problems of theft had been discovered. They
contained appellant’s handwriting, with which Hannah testified he was familiar. 
They were admitted simply to offer samples for the jury of regular facsimiles from
appellant to Hannah with appellant’s handwriting.
          State’s Exhibits 2 and 5 contained appellant’s handwriting and were sent in
response to a telephone conversation between Hannah and appellant. State’s Exhibit
4 contained appellant’s handwriting but was not sent in direct response to any
telephone conversation. State’s Exhibit 1 was sent in response to a telephone
conversation between Hannah and appellant but did not contain appellant’s
handwriting. This exhibit was, however, consistent in all other respects to the other
facsimiles sent to Hannah.
          We hold that State’s Exhibits 1, 2, 4, 5, 7, and 8 were sufficiently
authenticated. See Guidry v. State, 121 S.W.3d 849, 852 (Tex. App.—Beaumont
2003, no pet.) (holding testimony that facsimile received in response to telephone call
was sufficient to authenticate exhibit).
          State’s Exhibit 6 was a facsimile sent from Eckley to Hannah. Hannah testified
that he had received them from Eckley. Eckley testified that he got the statements
from the bank and showed them to Hannah. We hold that this was sufficient to
authenticate the exhibit. See Tex. R. Evid. 901(b)(1) (illustrating that testimony of
a witness with knowledge that a matter is what it is claimed to be is sufficient for
authentication purposes).
          State’s Exhibit 10 was a forged statement from a bank purporting to show
payments on the mortgage on Eckley’s property, King’s Crossing Town Center. 
Hannah testified that he was present when it was found in Eckley’s office and that the
exhibit had a transaction from a previous bank statement that had been cut and taped
onto the present statement. This altered copy had been faxed to Hannah earlier. We
hold that this was sufficient to authenticate the exhibit. See Tex. R. Evid. 901(b)(4)
(illustrating that documents with distinctive characteristics, taken in conjunction with
circumstances, are sufficiently authenticated).
          We overrule appellant’s fifth point of error.
Subpoena Duces Tecum
          In her fourth point of error, appellant argues that the trial court erroneously
quashed her subpoena for documents.
A.      Standard of Review
          We review the trial court’s rulings on motions for pretrial discovery for an
abuse of discretion. Shpikula v. State, 68 S.W.3d 212, 222 (Tex. App.—Houston [1st
Dist.] 2002, pet. ref’d).
B.      Analysis
          On May 4, 2004, appellant filed a subpoena duces tecum with the court
requesting certain documents from Eckley. The trial court held a hearing on May 27
and quashed the following of appellant’s requests:
[2] Any and all telephone message books from January 1, 2003 to August 31,
2003
 
[3] The personnel and/or employment files and cancelled payroll checks for the
following people: Sharon Usher, Leah Usher, Lori Long, [and] Linda Taylor

          . . . 
 
[5] The quarterly financial reports prepared by John W. Rood for the years
2000, 2001, and 2002
 
[6] Data entered into Quickbooks for the year 2003, either on a computer disk
or by a printout

          The trial court quashed the request for personnel files of former employees on
the basis that it was not relevant to the case and the other three requests on the basis
that they were overly broad. However, the trial court advised appellant that she
would probably be able to get some of the information for each of the denied requests
but that she would have to file a revised subpoena first. Appellant did not file a
revised subpoena in the three months prior to trial. On August 17, 2004—the second
day of the trial—appellant re-urged her subpoena before the court. The trial court
denied the request on the same grounds.



          Appellant cites the Sixth Amendment’s Compulsory Process Clauses as legal
authority to challenge the trial court’s ruling. U.S. Const. amend. VI. However, the
Sixth Amendment does not entitle a defendant to pretrial discovery. Shpikula, 68
S.W.3d at 221.
          Criminal defendants do not have a general right to discover evidence before
trial, but they have been granted limited discovery. See Tex. Code Crim. Proc.
Ann. art. 39.14 (Vernon Supp. 2005); Washington v. State, 856 S.W.2d 184, 187
(Tex. Crim. App. 1993). Decisions involving pretrial discovery of evidence that is
not exculpatory, mitigating, or privileged are within the discretion of the trial court. 
Kinnamon v. State, 791 S.W.2d 84, 91 (Tex. Crim. App. 1990), overruled on other
grounds, Cook v. State, 884 S.W.2d 485 (Tex. Crim. App. 1994). A subpoena duces
tecum is not to be used as a discovery weapon, but as an aid to discovery based upon
a showing of materiality and relevance. Cruz v. State, 838 S.W.2d 682, 686 (Tex.
App.—Houston [14th Dist.] 1992, pet. ref’d).
          The trial court found three of appellant’s requests to be overly broad and one
to be irrelevant, but the trial court told appellant that she could get some of the
information if she filed a revised subpoena duces tecum. Evidence is material only
if there is a reasonable probability that, had the evidence been disclosed to the
defense, the result of the proceeding would have been different. Cruz, 838 S.W.2d
at 685. Appellant fails to establish how any evidence that was requested in the
subpoena duces tecum would have created a different result in the proceeding. 
Moreover, the State provided the information regarding Quickbooks and the quarterly
financial reports in response to a request at trial. We hold that appellant has failed to
establish that the trial court abused its discretion in overruling the subpoena duces
tecum.
          Appellant’s fourth point of error is overruled.
Motion for Continuance
          In her third point of error, appellant argues that the trial court abused its
discretion when it denied her motion for continuance.
          Following the State’s examination of Castor-Brooks, appellant pointed out that
the State had elicited testimony from Castor-Brooks regarding both data entered into
Quickbooks and the quarterly financial reports prepared by Rood. Appellant again
requested that such information be supplied to appellant. In addition, appellant
requested a continuance to give her time to examine the documents. The trial court
instructed the State to supply the requested material immediately and granted
continuances for the rest of the afternoon and the following day. The trial court
denied appellant’s third motion for a continuance after the time granted by the first
two continuances had expired. None of appellant’s motions was submitted in writing.
          A motion for continuance must be written and sworn. Tex. Code Crim. Proc.
Ann. arts. 29.03, .08 (Vernon 1989). Ruling on an oral motion for continuance is
within the sound discretion of the trial court. Hightower v. State, 629 S.W.2d 920,
926 (Tex. Crim. App. 1981). “There is no abuse of discretion in failing to grant an
oral motion for continuance.” Id. “A motion for continuance not in writing and not
sworn preserves nothing for review.” Dewberry v. State, 4 S.W.3d 735, 755 (Tex.
Crim. App. 1999).
          Appellant acknowledges that her motions for continuance were not in writing. 
Nevertheless, appellant argues that this rule is not absolute. Indeed, our court, as well
as a number of sister courts, have held that when the denial of an oral motion for
continuance amounts to the denial of the rudiments of due process, such denial is
subject to appellate review for an abuse of discretion. See, e.g., Petrick v. State, 832
S.W.2d 767, 770 (Tex. App.—Houston [1st Dist.] 1992, pet. ref’d); O’Rarden v.
State, 777 S.W.2d 455, 459 (Tex. App.—Dallas 1989, pet. ref’d).
          The Court of Criminal Appeals has written that “[t]o find an abuse of discretion
in refusing to grant a motion for continuance, there must be a showing that the
defendant was prejudiced by his counsel’s inadequate preparation time.” Heiselbetz
v. State, 906 S.W.2d 500, 511 (Tex. Crim. App. 1995). The United States Supreme
Court has held that when reviewing a trial court’s refusal to grant a defendant
additional time to prepare for trial, “great deference must be shown to trial court,
because of the scheduling problems they face.” United States v. Cronic, 466 U.S.
648, 662 n.31, 104 S. Ct. 2039, 2048 n.31 (1984).
          Appellant fails to establish how she was prejudiced by the trial court’s refusal
to grant her third motion for continuance. Although appellant argued repeatedly, both
at trial and on appeal, about the State’s bad faith and the intrusion on her schedule by
having to examine some of the requested evidence in the evening, her sole argument
regarding prejudice is that “appellant was unable to cross-examine the State’s chief
witnesses about critical financial records used to prosecute appellant.” Appellant
makes no showing, however, that these witnesses were unavailable to her for cross-examination upon receipt of additional records. More importantly, she did not
develop a record in the trial court, either after the trial court denied the motion or in
a motion for new trial, as to the avenues of cross-examination she would have
pursued had the trial court allowed additional time to examine the documents.
          The vast majority of financial records relied on by the State to prosecute
appellant consisted of bank records showing numerous unauthorized credit card
charges and photocopies of forged checks. All of these records were made available
to appellant beginning in May prior to the August trial. Moreover, the State
questioned Castor-Brooks regarding the Quickbooks records and the quarterly
financial reports primarily to show that appellant had almost exclusive control of the
financial information reflected in Eckley’s financial records. Finally, during cross-examination of Castor-Brooks, appellant was able to show that, based upon Castor-Brook’s knowledge, the Quickbooks records were not password protected and, thus,
others could possibly have accessed the Quickbooks data.
          Appellant’s assertion that she was denied access to critical financial records is
not supported by the record. Moreover, appellant did not establish either at the time
she requested the continuance, or in a motion for new trial, that she was prejudiced
by the trial court’s denial of further continuances.
          We overrule appellant’s third point of error.
Cross-Examination
          In her sixth point of error, appellant argues that the trial court erred when it
refused to allow her to cross-examine Eckley about a check written to the Internal
Revenue Service (IRS).
A.      Standard of Review
          We review a trial court’s decision to admit or exclude evidence for an abuse
of discretion. Green v. State, 934 S.W.2d 92, 101–02 (Tex. Crim. App. 1996). The
test for abuse of discretion is whether the court acted without reference to any guiding
rules and principles by acting arbitrarily or unreasonably. Galliford v. State, 101
S.W.3d 600, 604 (Tex.App.—Houston [1st Dist.] 2003, pet. ref’d).
B.      Analysis
           The constitutional right of confrontation is violated when appropriate
cross-examination is limited. Carroll v. State, 916 S.W.2d 494, 497 (Tex. Crim. App.
1996) (citing Hurd v. State, 725 S.W.2d 249, 252 (Tex. Crim. App. 1987)); Stevenson
v. State, 997 S.W.2d 766, 768 (Tex. App.—Houston [1st Dist.] 1999, pet. ref’d). 
Appropriate cross-examination includes all avenues reasonably calculated to expose
a motive, bias, or interest for the witness to testify. Carroll, 916 S.W.2d at 497
(citing Lewis v. State, 815 S.W.2d 560, 565 (Tex. Crim. App. 1991)). Evidence to
show bias covers a wide range of topics, including “all facts and circumstances,
which . . . tend to show that a witness may shade his testimony for the purpose of
helping establish one side of the cause only.” Carroll, 916 S.W.2d at 497–98
(quoting Aetna Ins. Co. v. Paddock, 301 F.2d 807, 812 (5th Cir. 1962)).
          A trial court may permissibly limit the scope of cross-examination to prevent
harassment, prejudice, confusion of the issues, harm to the witness, and repetitive or
marginally relevant interrogation. Carroll, 916 S.W.2d at 498 (citing Delaware v.
Van Arsdall, 475 U.S. 673, 679, 106 S. Ct. 1431, 1435 (1986)). Cross-examination
may also be limited if it is not calculated to reveal bias or motive to testify falsely. 
See Carroll, 916 S.W.2d at 498.
          Appellant sought to cross-examine Eckley about a check paid to the IRS that
was not signed by him. Eckley claimed that the signature had been forged by
appellant. Appellant explained to the trial court the purpose of the cross-examination
about the check. As appellant established, Eckley was required to make quarterly
payments to the IRS. Appellant reasons that if Eckley did not sign the check, then he
would have noticed that he had gone three months without signing a check to the IRS. 
The implication from this is that there was a tacit agreement between Eckley and
appellant that she could sign checks in his name and that it was likely that there were
other checks that appellant was charged with forging but that she had been allowed
to sign.
          The trial court did not allow appellant to question Eckley about the check to
the IRS on the grounds that the cross-examination was not relevant. We disagree. 
This line of questioning goes to the degree that appellant had authority to sign checks
in Eckley’s name and goes against the allegation of forgery. We hold that this was
not so “marginally relevant interrogation” that the trial court was within its discretion
to exclude it.
          Next we must analyze whether appellant was harmed by the omission of this
testimony. In appellant’s bill of review, Eckley testified that he does not keep track
of when the IRS payments are due or if they are paid. Instead, Eckley trusts the
bookkeeper to keep track of the payments due. The bookkeeper prepares the checks
that need to be paid for each week, Eckley reviews them, and then Eckley signs the
checks. Beyond that, he relies on the bookkeeper to keep track of the bills and to
ensure that they get paid. We review this offered testimony for harm.
          Error in excluding cross-examination testimony is constitutional error. Shelby
v. State, 819 S.W.2d 544, 546 (Tex. Crim. App. 1991). A violation of the
Confrontation Clause is subject to harmless error analysis. Id. (citing Van Arsdall,
475 U.S. at 684, 106 S. Ct. at 1438). The focus of the Confrontation Clause is on
individual witnesses, and so we do not focus on the outcome of the entire trial when
making the initial determination of whether constitutional error was committed. 
Cooper v. State, 95 S.W.3d 488, 492 (Tex. App.—Houston [1st Dist.] 2002, pet.
ref’d).
          The test for harm in excluded testimony contains three steps. Shelby, 819
S.W.2d at 547. First, we assume that the damaging potential of the cross-examination
was fully realized. Id. Here, the damaging potential of the cross-examination would
be that the jury completely disbelieved Eckley’s answer and decided that he had
tacitly allowed appellant to sign some of the checks in his name.
          Second, we review the error in connection with the following factors: (1) the
importance of the witness’ testimony in the prosecution’s case; (2) whether the
testimony was cumulative; (3) the presence or absence of evidence corroborating or
contradicting the testimony of the witness on material points; (4) the extent of cross-examination otherwise permitted; and (5) the overall strength of the prosecution’s
case. Id.
          The testimony of Eckley was very important in the prosecution’s case. Much
of Eckley’s testimony was cumulative and corroborated by the testimony of other
witnesses. Additionally, Eckley’s testimony was corroborated by a large amount of
physical evidence. Other than the trial court’s exclusion of appellant’s cross-examination about the IRS check, appellant was allowed a full opportunity to cross-examine Eckley. Finally, the State had a very strong overall case.
          Third, we must determine whether the error was harmless beyond a reasonable
doubt. Id. Considering the foregoing analysis, we hold that the error was harmless
beyond a reasonable doubt.
          We overrule appellant’s sixth point of error.
Extraneous Offense
          In her seventh point of error, appellant argues that the trial court erred in
admitting evidence of an extraneous offense.
A.      Standard of Review
          A trial court’s admission of extraneous evidence is reviewed for an abuse of
discretion. Moses v. State, 105 S.W.3d 622, 627 (Tex. Crim. App. 2003). We will
affirm a trial court’s ruling that an extraneous offense has relevance apart from
proving conformity with the defendant’s character if the ruling is within the zone of
reasonable disagreement. Id. (citing Montgomery v. State, 810 S.W.2d 372, 391 (Tex.
Crim. App. 1990)). “When a trial court further decides not to exclude the evidence,
finding that the probative value of the evidence is not outweighed by the danger of
unfair prejudice, this decision too shall be given deference.” Id. We cannot simply
substitute our own decision for the trial court’s. Id. 
B.      Analysis
          During the trial, the State called William Trout to the stand as an extraneous
offense witness.


 Trout was president of the Town Center Park Association, and he
was called to testify that appellant had stolen money from the association. The State
offered his testimony to establish intent, motive, and lack of mistake. The trial court
admitted his testimony for those reasons.
          Rule 404(b) precludes a defendant from being tried for his collateral crimes or
for having a propensity for criminal conduct. Tex. R. Evid. 404(b); Nobles v. State,
843 S.W.2d 503, 514 (Tex. Crim. App. 1992). Extraneous offenses thus are not
admissible at the guilt-innocence phase of a trial to prove that a defendant committed
the charged offense in conformity with a bad character. Tex. R. Evid. 404(b).
Extraneous offense evidence that has relevance beyond character-conformity,
however, may be admissible. Id.; Moses, 105 S.W.3d at 626. Intent, motive, and
lack of mistake are valid purposes to offer evidence of extraneous offenses. Tex. R.
Evid. 404(b).
          Part of appellant’s defense at trial was that “she actually had permission to
execute the transactions she was charged with.” Trout’s testimony assisted in
rebutting this defensive theory. This testimony strengthened the State’s showings of
intent, motive, and lack of mistake. We hold that the trial court did not abuse its
discretion in overruling appellant’s objection.
          We overrule appellant’s seventh point of error.
Fraud Examiner
          In her eighth point of error, appellant argues that the trial court erred in
allowing the testimony of a fraud examiner who had not been disclosed to appellant
prior to trial.

A.      Standard of Review
          We review the admission or exclusion of expert or lay witnesses for an abuse
of discretion. Osbourn v. State, 59 S.W.3d 809, 814 (Tex. App.—Austin 2001), aff’d,
92 S.W.3d 531 (Tex. Crim. App. 2002).
B.      Analysis
          Bryan Vaclavik is a fraud examiner for the Harris County District Attorney’s
Office. The State called him to provide summaries that he had created of the business
documents that had been admitted into evidence. The summaries totaled the amount
of money stolen from Eckley.
          Article 39.14(b) of the Texas Code of Criminal Procedure requires, upon a
motion requesting the information, either party to disclose the expert witnesses that
the party plans on calling to the stand. Tex. Code Crim. Proc. Ann. art. 39.14(b)
(Vernon 2005). An expert witness is one who is qualified by knowledge, skill,
experience, training, or education to give opinion testimony based on scientific,
technical, or other specialized knowledge. Tex. R. Evid. 702. A lay witness can only
give opinion or inferential testimony if it is (1) rationally based on the perception of
the witness and (2) helpful to a clear understanding of the witness’s testimony or the
determination of a fact in issue. Tex. R. Evid. 701.
          Appellant argues that Vaclavik only qualified as an expert witness and because
the State failed to notify appellant about his testimony, the trial court court erred in
admitting his testimony. In support of her argument, appellant complains that
Vaclavik identified his job title as a “fraud examiner” and explained what a fraud
examiner does.



          The testimony that appellant complains of concerns Vaclavik’s background and
work experience. The mere fact that a witness is highly qualified, even in the area on
which he is testifying, does not render that witness an expert witness. Holloway v.
State, 613 S.W.2d 497, 501 (Tex. Crim. App. 1981). Instead, the focus is on the
substance of the witness’ testimony and whether the testimony requires specialized
knowledge, skill, experience, training, or education to present it to the jury. Croft v.
State, 148 S.W.3d 533, 541 (Tex. App.—Houston [14th Dist.] 2004, no pet.).
          Vaclavik testified to the summaries of information that the trial court had
admitted, as permitted by rule 1006 of the Texas Rules of Evidence, all except one
without objection. The summaries were of bank and credit card records admitted into
evidence. At trial, the State argued that Vaclavick would be “totaling the figures
which doesn’t call for any expertise other than the ability to run a calculator.” He did
not offer opinion testimony on the source of the money or the responsible party. We
hold that Vaclavik testified as a lay witness and his testimony did not exceed the
limits placed on the testimony of lay witnesses.
          We overrule appellant’s eighth point of error.
Lesser Included Offense Jury Instruction
          In her ninth point of error, appellant argues that the trial court erred in denying
her request for a jury instruction on the lesser included offense of second-degree
felony theft.
A.      Standard of Review
          We review the entire record to see if there is some evidence establishing the
lesser included offense. Rousseau v. State, 855 S.W.2d 666, 673 (Tex. Crim. App.
1993); Willis v. State, 936 S.W.2d 302, 307 (Tex. App.—Tyler 1996, pet. ref’d). We
determine whether any scenario presented will support the requested charge. Willis,
936 S.W.2d at 307. In our review, we do not address the weight and credibility of the
defendant’s version of events. Saunders v. State, 840 S.W.2d 390, 391 (Tex. Crim.
App. 1992).
          “[A] two-prong test must be met before a jury charge instruction on a
lesser-included offense must be given: (1) the lesser-included offense must be
included within the proof necessary to establish the offense charged; and (2) some
evidence must exist in the record that if the defendant is guilty, he is guilty only of
the lesser offense.” Hampton v. State, 109 S.W.3d 437, 440 (Tex. Crim. App. 2003).
B.      Analysis
          One way for an offense to be a lesser-included offense is for it to differ from
the charged offense only in degree of harm. Tex. Code Crim. Proc. Ann. art. 37.09
(Vernon 1981). Appellant was charged with aggregate theft in the first degree. Tex.
Pen. Code Ann. §§ 31.03(a), (e)(7), .09. A theft is a theft in the first degree if the
value of the property stolen is $200,000 or more. Tex. Pen. Code Ann.
§ 31.03(e)(7). At trial, appellant urged the court to include instruction on theft in the
second degree. A theft is a theft in the second degree if the value of the property
stolen is $100,000 or more but less than $200,000. Tex. Pen. Code Ann.
§ 31.03(e)(6) (Vernon Supp. 2005). Theft in the second degree differs from theft in
the first degree only in degree of harm, and is capable of being included in a jury
instruction as a lesser-included offense.
          Next we determine if there was some evidence showing that appellant is guilty
only of the lesser-included offense. It is not enough for the jury to disbelieve crucial
evidence pertaining to the greater offense. Hampton, 109 S.W.3d at 441. There must
be evidence directly raising proof of the lesser offense. Id. 
          Appellant’s only argument for why the court should have included the lesser
included offense of second-degree theft is that “considering that the evidence . . . did
not directly link appellant to all the losses claimed by the complainant, the jury should
have been afforded the opportunity to determine whether appellant may only have
been guilty . . . of the lesser offense of second-degree theft.” Even if we had not
already held that direct evidence was not required to establish guilt, this does not
meet the requirements set out by case law. Appellant does not point to any evidence
directly raising proof that appellant only stole between $100,000 and $200,000, and
we do not find such evidence in the record.
          Appellant’s ninth point of error is overruled.
Motion for Mistrial
          In her tenth point of error, appellant argues that the trial court erred when it
failed to declare a mistrial after sustaining objections to hearsay testimony.
A.      Standard of Review
          We review the trial court’s denial of a motion for mistrial for an abuse of
discretion. Ladd v. State, 3 S.W.3d 547, 567 (Tex. Crim. App. 1999).
B.      Analysis
          A mistrial is a device used to halt trial proceedings when error is so prejudicial
that expenditure of further time and expense would be wasteful and futile. See Sewell
v. State, 696 S.W.2d 559, 560 (Tex. Crim. App. 1983). Thus, a trial court may
properly exercise its discretion to declare a mistrial if a verdict of conviction could
be reached, but would have to be reversed on appeal due to an obvious procedural
error in the trial. Id. The determination of whether a given error necessitates a
mistrial must be made by examining the particular facts of the case. Hernandez v.
State, 805 S.W.2d 409, 414 (Tex. Crim. App. 1990).
          The testimony that appellant complains of took place while Eckley testified
about discovering the thefts that had occurred. Eckley talked about John Rood, a
CPA who filed the tax forms for Eckley’s companies. During that point, the
following exchange occurred:
Eckley: And the reason that came about was for a couple of years we had been
having problems with my accountant’s employees not getting our work
out—that’s what Jerri Reuter told me—and it was slow.
And I think I asked John Rood, the principal of that company, and he
said that that’s because we never get complete information or
information that is—

          [Defense Counsel]: Objection, Your Honor, hearsay.

          The Court: Sustained

          Eckley: Okay.

          [Defense Counsel]: I ask the jury to disregard those comments.

          The Court: The jury will disregard the last statement by the witness.

          [Defense Counsel]: And, Judge, I have to ask for a mistrial.

          The Court: Denied.
          Appellant argues that after the jury heard that hearsay statement, it could not
be expected to properly apply the law to the facts. We disagree. The hearsay
statement conveyed very little to the jury. At most, it suggested that Rood, who was
not central to the case, had received incomplete information. An instruction to
disregard was sufficient to cure any harm that might have resulted from the statement.
          Appellant’s tenth point of error is overruled.
Conclusion
          We affirm the judgment of the trial court.
 
                                                                        Laura Carter Higley
                                                                        Justice

Panel consists of Justices Taft, Higley, and Bland.

Do not publish. See Tex. R. App. P. 47.2(b).