**Coby MINTON, Appellant**

**v.**

**The STATE of Texas, Appellee**

**No. 07–14–00113–CR**

Court of Appeals of Texas, Amarillo.

February 12, 2016

---

Jeffrey S. Ford, for The State of Texas.

Joel Cook, for Coby Minton.

Before QUINN, C.J., and CAMPBELL and PIRTLE, JJ.

## OPINION

Patrick A. Pirtle, Justice

Following a plea of not guilty, Appellant, Coby Minton, was convicted by a Lubbock County jury of possession of heroin with intent to deliver in an amount of four grams or more but less than 200 grams, a first degree felony.[1] Punishment was assessed by the trial court at twenty years confinement. By two issues, Appellant challenges the legal sufficiency of the evidence (1) under the accomplice witness rule and (2) to support a finding that the offense occurred in Lubbock County, or that he directed, encouraged, or aided Norman West to possess heroin with intent to distribute in Lubbock County. We affirm.

BACKGROUND

In late 2010, a concerned citizen reported to Lubbock County law enforcement authorities that Appellant's co-defendant, Norman West, was involved in narcotics activity involving heroin. The complaint triggered surveillance and an investigation into the suspected heroin operation. Nar-cotics investigators developed the theory that West was a heroin dealer in Lubbock County and Appellant was his supplier. Appellant lived in Lewisville, Texas. The investigation tended to suggest that the operation involved West fronting money to Appellant through either deposits into bank accounts or financial transactions through Western Union. West would then travel from Lubbock to meet Appellant at a midway point where the heroin would be delivered.

Without his knowledge, West's vehicle was equipped with a court-ordered tracking device. A Lubbock investigator reached out to the Narcotics Division of the Texas Department of Public Safety in Wichita Falls for assistance concerning the investigation. The Department advised one of its investigators, Mark Ball, that on December 6, 2010, West would be traveling east on U.S. Highway 82 toward Wichita Falls to meet his heroin supplier, who would be traveling west from the Dallas area in a gray Acura. Ball, in plain clothes and in an unmarked vehicle, was directed to establish surveillance. He observed West's vehicle stopped at a roadside rest area near Seymour, Texas, which is midway between Lubbock and Wichita Falls.

Ball then drove back and forth along the highway to conduct surveillance.[2] On one of his passes by the rest area, he observed a gray Acura stopped in the rest area near West's vehicle. Two men exited their respective vehicles and met for approximately twelve minutes. Although Ball did not witness an exchange, after Appellant and West left the rest area, Ball followed the gray Acura to Wichita Falls. He also

---

1. TEX. HEALTH & SAFETY CODE ANN. § 481.112(d) (West 2010).

2. Ball testified he repeatedly drove a mile or mile and a half in one direction and then turned around and drove in the opposite direction to surveil the rest area without being detected.

contacted a Department of Public Safety trooper in Wichita Falls and asked that he be on the lookout for the gray Acura. Ball requested the trooper to find probable cause to stop the vehicle and identify the driver.

A uniformed trooper stopped the gray Acura in Wichita Falls for speeding. He identified the driver as Appellant and issued him a warning. The trooper testified that during the stop he was not alerted to any criminal activity or unusual smells.

Near the same time, Department of Public Safety Trooper Brent Collins was advised that West would be transporting narcotics into the Lubbock area and he too was asked to conduct a traffic stop. As West traveled through Idalou,[3] Collins observed him commit several traffic violations and pulled him over. According to the trooper, West was nervous and shaking. West did, however, give Collins consent to search his vehicle. When a canine officer arrived on the scene, West began experiencing chest pains and an ambulance was called. The canine alerted on the vehicle. West was arrested, and after he waived his *Miranda*[4] rights, he admitted he was in possession of $4,000 worth of heroin.

The case agent for the heroin investigation, Lieutenant Steven Schwartz, who was stationed in Lubbock, testified he was on his way to Seymour to maintain surveillance on West when he was notified that West had been stopped near Idalou. When he arrived at the scene of the traffic stop, he and another officer searched West's vehicle. They found a cylindrical object in the center console wrapped in aluminum foil which Schwartz believed contained heroin. He removed the item and packaged it as evidence. Expert testimony established that the package contained 58.69 grams of heroin. Schwartz testified that amount was not for personal use; rather, it was an amount tending to establish intent to deliver.

West was transported by ambulance to the hospital for an examination of his chest pains. When he was released, he was questioned by Schwartz and agreed to be interviewed at the Department of Public Safety Office in Lubbock. He agreed to cooperate and provided Schwartz with information on his heroin trafficking operation and surrendered his cell phone for review of drug transactions.[5] Appellant's cell phone number was in West's contacts under the name "Cowboy." West explained to Schwartz how he would front money to Appellant who would then obtain the drugs and deliver them to him.

Financial records were obtained *via* subpoena establishing a pattern of deposits into bank accounts opened in Appellant's name in Lubbock and Levelland which corresponded to heroin transactions.[6] A deposit of $3,400 was made to one account on December 4, 2010, which corresponds to the amount of heroin seized when West was arrested two days later. Other deposits corresponded with text messages that were consistent with fronting money for a drug transaction.

Schwartz also testified to numerous text messages between West and "Cowboy." The messages themselves were innocuous but, according to Schwartz, were code for

---

**3.** Idalou is a small town just northeast of Lubbock and is located in Lubbock County, Texas.

**4.** *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

**5.** The case agent testified that nicknames and codes are used when conducting drug transactions by cell phone.

**6.** Western Union was also used to front money to Appellant.

checking in with each other after each had returned home following a transaction.[7] West explained to Appellant his delay in contacting him after their December 6th meeting by texting that he had car trouble. Schwartz's testimony established an ongoing relationship between West and Appellant dating back to September 2010.

Upon establishing that Appellant was West's supplier, Schwartz drove to Appellant's address in Lewisville to speak with him. They spoke briefly before Appellant ended the conversation. Schwartz then obtained an arrest warrant. Upon Schwartz's return to Appellant's address to arrest him, Appellant fled out a back door. He was arrested several weeks later by local police. Following his arrest, he was charged with and tried for possession of a controlled substance, to-wit: heroin, with intent to deliver in Lubbock County.

ACCOMPLICE WITNESS TESTIMONY

■ By his first issue, Appellant challenges the sufficiency of the evidence to support his conviction under the accomplice testimony rule. We disagree.

The only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense the State is required to prove beyond a reasonable doubt is the standard set forth in *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). *See Brooks v. State*, 323 S.W.3d 893, 912 (Tex.Crim.App.2010).

■ The accomplice witness rule provides that a person may not be convicted based on the testimony of an accomplice witness unless that testimony is corroborated by other evidence tending to connect the defendant with the offense committed;

and the corroboration is not sufficient if it merely shows the commission of the offense. *See* TEX.CODE CRIM. PROC. ANN. art. 38.14 (West 2005); *Smith v. State*, 332 S.W.3d 425, 439 (Tex.Crim.App.2011). In reviewing the sufficiency of the corroborating evidence, we eliminate the accomplice testimony from consideration and focus on the remaining evidence to determine whether there is any evidence that tends to connect the defendant with the commission of the crime. *Solomon v. State*, 49 S.W.3d 356, 361 (Tex.Crim.App.2001). Evidence that merely shows the offense was committed is insufficient to corroborate an accomplice's testimony. *Smith*, 332 S.W.3d at 439. It is not necessary that the corroborating evidence directly connect the accused to the crime or that it be sufficient in and of itself to establish guilt, just so long as it tends to connect the accused to the offense. *Cathey v. State*, 992 S.W.2d 460, 462 (Tex.Crim.App.1999). If the combined weight of the non-accomplice evidence tends to connect the defendant to the offense, the requirement of article 38.14 of the Code has been fulfilled. *Id.*

Here, West testified Appellant supplied him with large quantities of heroin to sell. West admitted that he would make deposits into Appellant's bank accounts or use Western Union transactions to front money for the heroin. Appellant would then communicate with him and provide a location to pick up the heroin.

West's girlfriend, another co-defendant, testified about a "run" she made to Abilene to a location selected by Appellant on September 28, 2010. She met with Appellant, gave him money she had received from West, and received a package of her-

---

7. The text messages were to assure one another that neither had been caught following the transaction.

oin. She described placing the heroin in two condoms then securing them inside her body to avoid detection on the return trip to Lubbock. She too was stopped and detained on her way back to Lubbock. A search warrant was obtained and the heroin was removed from her body cavity in the hospital. Without packaging, the amount of heroin she possessed was 70.75 grams.

Disregarding West's and his girlfriend's testimony, non-accomplice evidence consisted of Schwartz's testimony, Ball's testimony, financial records, and cell phone records. Ball testified he observed Appellant and West meet at a rest area midway between Lubbock and Wichita Falls on December 6, 2010, for approximately twelve minutes. Ball then followed Appellant into Wichita Falls where he was stopped by a trooper, identified, and issued a warning for speeding.

Schwartz was involved in the traffic stop and subsequent search of West's car near Lubbock where a large amount of heroin was seized. Without objection, Schwartz testified about his interview with West and how West described fronting money into Appellant's bank accounts in exchange for heroin. Numerous financial records were introduced into evidence beginning October 1, 2010, when Appellant opened one of his bank accounts. Although Appellant was unemployed, the evidence established a pattern of large deposits into his accounts consistent with fronting money. Specifically, the evidence established that a deposit of $3,400 was made on December 4, 2010, two days before West's arrest, which according to Schwartz, correspond-

ed to approximately three ounces of heroin.

Schwartz gave testimony concerning numerous text messages retrieved from West's cell phone. The dates of the text messages were on or about dates that West picked up heroin.[8] A text message dated December 4, 2010, from Appellant's cell phone to West contained a bank account number. The same bank account number was sent by text message from Appellant to West again on December 7, 2010. A second phone number was tied to Appellant—that of his mother—which established a relationship with West dating back to September 2010. Records from the second phone number listed calls to West and several of West's associates who all had cell phone numbers with an 806 area code prefix, that of the Lubbock area. Schwartz concluded that from September 18th to December 6th, $42,100 had been transferred to Appellant from different banks in the Lubbock area.

Notwithstanding Appellant's position that he was not in Lubbock County at the time of the offense, we conclude the non-accomplice evidence more than corroborates West's and his girlfriend's testimony that Appellant was supplying them with large quantities of heroin to sell in the Lubbock area. Article 38.14 of the Texas Code of Criminal Procedure requires that corroborating evidence *tend* to connect Appellant with the offense committed—in this case possession of heroin with intent to deliver in an amount of four grams or more but less than 200 grams. It is not a requirement that the corroborating evidence directly connect Appellant to the crime or that it be sufficient in and of itself

8. Some of the texts included "Is everything a go?" and "Made home safe, call me tomorrow." A text message dated December 3, 2010, from Appellant to West provided "If you could do 1 g i can use some to flip when we meet up. But that will get me by for i need to pay car payment." During cross-examination, defense counsel attempted to establish the "1 g" was a loan from West to Appellant for Appellant's mom's surgery.

to establish guilt. *Cathey*, 992 S.W.2d at 462. Issue one is overruled.

VENUE

■ By his second issue, Appellant maintains the evidence is insufficient to support a finding that the offense occurred in Lubbock County, or that he directed, encouraged, or aided West to possess heroin with intent to distribute in Lubbock County. Again, we disagree.

■ Venue in a criminal case is generally proper in the county where an offense is alleged to have been committed. TEX.CODE CRIM. PROC. ANN. art. 13.18 (West 2015). Here, the State alleged that the offense of possession of a controlled substance with intent to deliver occurred in Lubbock County. The State is required to prove venue by a preponderance of the evidence. *Id.* at 13.17. Venue concerns the geographic location where the case may be tried and is, at least in part, determined by whether the criminal acts had "substantial contacts" with the location. *Soliz v. State*, 97 S.W.3d 137, 143 (Tex. Crim.App.2003). Venue is not a criminative fact and therefore not an element of an offense under Texas law. *Schmutz v. State*, 440 S.W.3d 29, 34 (Tex.Crim.App. 2014). Additionally, venue is not implicated in a review of sufficiency of the evidence to prove the elements of an offense, nor does it require acquittal in a sufficiency review. *Id.* at 35.

A person commits the offense of possession of a controlled substance with intent to deliver if the person knowingly possesses with intent to deliver a controlled substance listed in Penalty Group 1. TEX. HEALTH & SAFETY CODE ANN. § 481.112(a) (West 2010). Heroin is a substance listed in Penalty Group 1. *Id.* at § 481.102(2). Under the law of parties, a person is criminally responsible for an offense committed by the conduct of another if, acting with intent to promote or assist that offense he solicits, encourages, directs, aids, or attempts to aid the other person in the commission of the offense. TEX. PENAL CODE ANN. § 7.02(a)(2) (West 2011).

■ In this case, the jury was charged with the law of parties. Under that theory, the State was required to show that at the time of the offense, Appellant and his co-defendants were acting together, each contributing some part towards the execution of their common purpose. *Wooden v. State*, 101 S.W.3d 542, 546 (Tex.App.–Fort Worth 2003, pet. ref'd). Circumstantial evidence may be used to prove party status. *Escobar v. State*, 28 S.W.3d 767, 774 (Tex.App.–Corpus Christi 2000, pet. ref'd). Whether an accused participated as a party to an offense may be determined by examining the events occurring before, during, and after the commission of the offense and by the actions of the accused that show an understanding and common design to commit the offense. *Id.*

Here, Appellant does not dispute that he aided West in possessing heroin in a county outside of Lubbock County. He does, however, dispute that he aided or encouraged West with possession with intent to deliver in Lubbock County. In support of his position, he maintains he was never closer than 175 miles (the roadside rest area) to the scene of the crime. Relying on *Lewis v. State*, No. 05–94–01051–CR,1996 WL 640590, 1996 Tex.App. LEX-IS 4894 (Tex.App.–Dallas Oct. 31, 1996, no pet.) (mem. op., not designated for publication), he contends his actions and crimes were complete prior to West's re-entry into Lubbock County and that there is no evidence to support a finding that he committed the charged offense in Lubbock County.

*Lewis* involved a reverse sting operation[9] and it is distinguishable with respect

to the offense committed. That case involved the offense of illegal investment for the purpose of purchasing a controlled substance.[10] The appellant and a co-defendant were from Oklahoma. An undercover officer called the co-defendant from Collin County, Texas, to set up the sting. A confidential informant from Texas met with the co-defendant and they drove to an abandoned truck stop two miles south of the Oklahoma border where the appellant and others were waiting. *Id.* at *1, 1996 Tex.App. LEXIS 4894, at *3. All participants drove from the truck stop to a fast-food parking lot in Grayson County, Texas, where the appellant transferred a sack containing a large amount of money to the co-defendant. *Id.* After that, the appellant headed north toward Oklahoma and the co-defendant and confidential informant traveled to Plano in Collin County, Texas, where they purchased methamphetamine from the undercover officer. The appellant was charged with illegal expenditure or investment in Collin County, Texas, notwithstanding that he had not been in Collin County. Under the law of parties, he was found guilty. *Id.* at *2, 1996 Tex.App. LEXIS 4894, at *5. Appellant did not contest the issue of venue. Instead, he claimed the evidence was legally insufficient to establish that he had committed the offense of illegal investment in Collin County.

On appeal, the appellant argued he did not commit any "act" or perform any "conduct"[11] in Collin County, Texas, and therefore, the State failed to prove beyond a reasonable doubt that he committed an offense in Collin County, Texas. *Id.* at *2, 1996 Tex.App. LEXIS 4894, at *5–6. The State's argument that venue was proper for conspiracy purposes in either Collin County or Grayson County was rejected by the appellate court because the appellant had not been charged with conspiracy. *Id.* at *2, 1996 Tex.App. LEXIS 4894, at *7. In reversing appellant's conviction, the court reasoned that the offense of illegal investment was completed once the parties raised the money and agreed to commit it to the purchase of a controlled substance—acts that were completed while the parties were still in Oklahoma. Based on that reasoning, the court concluded that, viewing the evidence in the light most favorable to the verdict, no rational juror could have found beyond a reasonable doubt that appellant encouraged, directed, aided, or attempted to aid the commission of the offense of illegal investment in Collin County. *Id.* at *3, 1996 Tex.App. LEXIS 4894, at *9–10.

That is not the case before us. In this case, Appellant is contesting venue as to the offense of possession of a controlled substance with intent to deliver. Notwithstanding that venue is not implicated in a sufficiency review, there is evidence from which a rational juror could have found beyond a reasonable doubt that Appellant promoted or assisted the possession of a controlled substance in Lubbock County by aiding or attempting to aid West's possession of the heroin delivered. The evidence established that West,

---

9. In a reverse sting, undercover agents attempt to sell rather than purchase a controlled substance.

10. The offense of illegal investment is complete once the parties have raised the money and agreed to commit it to the purchase of a controlled substance.

11. The Texas Penal Code defines "act" as a bodily movement, whether voluntary or involuntary, and includes speech. Tex. Penal Code Ann. § 1.07(a)(1) (West Supp.2015). "Conduct" means an act or omission and its accompanying mental state. *Id.* at 1.07(a)(10).

West's girlfriend, and Appellant had an ongoing relationship involving fronting money for heroin which was then possessed in Lubbock County with the intent that it be delivered to heroin users. Appellant opened bank accounts in Lubbock County which established a pattern of deposits over several months corresponding with large heroin purchases. Cell phone records also established a pattern of deals involving Appellant providing heroin to West and West's girlfriend for the purpose of selling it in Lubbock County.

■ West, West's girlfriend, and Appellant each contributed some part towards the execution of their common purpose—to sell heroin in Lubbock County. West and his girlfriend fronted the money and Appellant provided the heroin. In order to be criminally responsible for possession of a controlled substance, it is not required that a party actually participate in the commission of the offense, so long as they aid or attempt to aid another with the intent to promote or assist the commission of the offense. *Cross v. State,* 550 S.W.2d 61, 63–64 (Tex.Crim.App.1977) (holding defendant criminally responsible for robbery because he helped plan it even though he did not actually participate in the robbery).

Viewing the evidence before, during, and after the commission of the offense, we conclude Appellant's conduct showed an understanding and common design that he was providing heroin to West and West's girlfriend for the purpose of selling it in Lubbock County. The evidence is sufficient under the law of parties to support a finding that Appellant promoted or assisted the offense by soliciting, encouraging, directing, aiding, or attempting to aid West and West's girlfriend in committing the charged offense. Issue two is overruled.

CONCLUSION

Accordingly, the trial court's judgment is affirmed.