Kenneth Allen CROSS, Appellant,

v.

The STATE of Texas, Appellee.

No. 53043.

Court of Criminal Appeals of Texas.

April 20, 1977.

Rehearing Denied May 18, 1977.

---

Frank Coffey, Fort Worth, for appellant.

Robert J. Glasgow, Dist. Atty., Stephenville, Jim D. Vollers, State's Atty., and David S. McAngus, Asst. State's Atty., Austin, for the State.

## OPINION

DOUGLAS, Judge.

This is an appeal from a conviction for aggravated robbery. Punishment was assessed by the jury at ten years. Appellant's main contentions are that the evidence is insufficient to show that he was a party to the offense. We overrule these contentions.

Lee Beck Hill testified that she was a cashier at Blue's Grocery in Mineral Wells on January 23, 1975. At approximately 6:00 p.m. a man wearing two suits of clothes and a ski mask came in and robbed her at gunpoint. He placed the contents of the cash register and some change located underneath the register in a sack and left the store. She could not identify the man who robbed her.

Linda Sadler testified that she was married to Lafayette Sadler and that they were living in an apartment in Mineral Wells when the offense occurred. At 4:00 p.m. on that date Walter Schultz, Robert Sanders and appellant came to the apartment to see Lafayette Sadler. Shortly thereafter, she overheard the four men planning to rob Blue's Grocery. According to the plan, "they was going out about sometime that evening after dark, and Walter was going in the store, and Lafayette was in the phone booth, and Kenneth (appellant) was in the grass, and Robert was driving the car."

Linda testified that Schultz, Sanders and appellant subsequently left the apartment and then returned with a change of clothes. They apparently intended to throw away the clothes they were wearing after the robbery was committed. Walter Schultz had a ski mask which he intended to wear during the robbery.

Linda further testified that appellant left the apartment before the other three men did. Schultz, Sanders and Lafayette Sadler left "about dark." Lafayette returned alone sometime later. The next afternoon the four men met again at the apartment where she heard them discuss the completed robbery. She did not know the amount of money they obtained or how it was "split up."

On cross-examination she testified that she did not know what appellant said during the two conversations she overheard. Nor did she know who did the talking.

Lafayette Sadler testified that he was tried and convicted for the robbery of Blue's Grocery Store. On the date in question he and Schultz, Sanders and appellant met in his apartment to plan the robbery. During the robbery he was supposed to stand in a phone booth and act as a lookout. Sanders was supposed to have been in a car, Schultz was supposed to go into the store and rob the cashier, and appellant was supposed to lie "in the grass" with a gun and act as a lookout.

Lafayette Sadler related that he and Schultz changed clothes in the apartment prior to the robbery. Appellant did not change clothes because he "already had on some clothes." Sadler went to his position in the phone booth at approximately 6:00 p.m. When he left the apartment the other three men were still there. At the scene of the crime he saw Sanders riding around near Blue's. He did not see appellant there. After a lady came up to the phone booth Sadler left and returned to the apartment. Half an hour later he met Sanders coming up the stairs who assured him everything was all right and left.

Sadler further testified that Sanders again came to the apartment the next afternoon to give Sadler his share of the money. Sadler received $130.00. Sanders did not tell him how much money was stolen or whether it was split three or four

ways. Sanders then left. Sadler stated that nobody else came by the apartment and that the four men did not get together and discuss the robbery that day.

Sadler related that he did not know whether appellant received any money from the robbery. After Sadler, Schultz and Sanders were arrested in Mineral Wells on June 5, 1975, Sadler did not see appellant again. Appellant, who had been living in Forth Worth, went to Portland, Oregon sometime thereafter where he was arrested.

On cross-examination Sadler testified that appellant mentioned he did not want to get involved in the robbery. Appellant told the men that the crime was risky and that he thought they should not go through with it.

Appellant testified that he was present in Sadler's apartment during the planning of the robbery but that he told the others he was too scared to participate. He left the apartment with the others on the day of the offense. When they got outside the apartment he told the others that he did not want to be involved. He discussed the matter with them for awhile and finally said, "Well, I'm not going to be in it." He then went home. The others went to Blue's. He stated that he did not receive any money from the robbery.

Appellant testified on cross-examination that he was supposed to lie in the grass near the store and keep a lookout. He stated that he did not have a pistol. He quit his job at General Dynamics in Fort Worth, apparently the day after Lafayette Sadler, Schultz and Sanders were arrested. He related that he went to Portland to care for his ill sister.

The record reflects that Walter Schultz and Robert Sanders were tried and convicted of the robbery. They did not testify at appellant's trial.

The record does not show that appellant was present at the time of the robbery. Thus, he can only be guilty under the theory of parties as defined by V.T.C.A., Penal Code, Sections 7.01, 7.02 and 7.03.

Section 7.01 provides:

"(a) A person is criminally responsible as a party to an offense if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible, or by both.

"(b) Each party to an offense may be charged with commission of the offense.

"(c) All traditional distinctions between accomplices and principals are abolished by this Section, and each party to an offense may be charged and convicted without alleging that he acted as a principal or accomplice."

Section 7.02 provides in pertinent part:

"(a) A person is criminally responsible for an offense committed by the conduct of another if:

\*     \*     \*     \*     \*     \*

"(2) acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense;

.   .   ."

Section 7.03 provides in pertinent part:

"In a prosecution in which an actor's criminal responsibility is based on the conduct of another, the actor may be convicted on proof of commission of the offense and that he was a party to its commission   .   .   .   ."

■ Appellant and Sadler testified that appellant actively participated in the planning of the robbery. The jury was authorized to reject appellant's testimony. Appellant's testimony that he did not participate in the robbery, if taken as true, would not relieve him of the criminal liability because there is sufficient evidence that he acted with intent to promote or assist in the commission of the robbery as denounced by V.T.C.A., Penal Code, Section 7.02(a)(2).

■ Under the evidence appellant would have been an accomplice before the adoption of the present code and could not have been convicted as a principal. But the classifications under the 1925 Penal Code no

longer exist. Section 7.01(c), supra. The court properly instructed the jury applying the law to the facts. Viewing the evidence in the light most favorable to the State, as we must, we hold that the evidence is sufficient to show that appellant was a party to the offense.

Appellant contends that the State failed to prove ownership of the property taken from the complaining witness. The complaining witness was the cashier. The money was taken from her. Under the present penal code the evidence is sufficient if it shows that the property was taken from the care, custody and control of the complaining witness. See *Reese v. State,* 531 S.W.2d 638 (Tex.Cr.App.1976).

In other grounds of error complaint is made concerning the admissibility of evidence. No objections were made when the evidence was offered. Nothing is presented for review.

No error is shown. The judgment is affirmed.

PHILLIPS, J., dissents.