James Steven **HIGHTOWER**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 61119.

Court of Criminal Appeals of Texas,
Panel No. 3.

Nov. 18, 1981.

Rehearing Denied En Banc April 7, 1982.

922

Nancy J. Canonico, Waco, for appellant.

A. Rick Hightower, on motion for rehearing, Waco, for appellant.

Felipe Reyna, Dist. Atty. and Karen C. Matkin, Asst. Dist. Atty., Waco, Robert Huttash, State's Atty., Austin, for the State.

Before TOM G. DAVIS, ODOM and DALLY, JJ.

OPINION

TOM G. DAVIS, Judge.

Appeal is taken from a conviction for aggravated robbery. After finding appellant guilty, the jury assessed punishment, enhanced by a prior conviction, at 50 years.

In his first ground of error, appellant maintains the court erred in overruling his motion to quash the indictment. He contends the indictment was insufficient to provide him notice of the offense with which he was charged because the property description in the indictment is insufficient and the indictment fails to state who owned the property. The indictment under which appellant was prosecuted alleges in pertinent part that on May 8, 1978, appellant:

"did then and there intentionally and knowingly while in the course of committing the offense of theft, and with the intent to obtain and maintain control of property, namely current monies of the United States, threaten and place RONALD KING in fear of imminent serious bodily injury and death by using and exhibiting a deadly weapon, namely a handgun."

The offense of aggravated robbery, under V.T.C.A. Penal Code, Sec. 29.03, is no longer an aggravated form of theft, but is rather a form of assault. *Ex Parte Lucas*, 574 S.W.2d 162 (Tex.Cr.App.). It has thus been held that it is unnecessary to allege

the elements of theft in an aggravated robbery indictment. *Earl v. State*, 514 S.W.2d 273 (Tex.Cr.App.). In *Hill v. State*, 568 S.W.2d 338 (Tex.Cr.App.), it was held that even if a motion to quash is filed, an indictment for aggravated robbery which alleges the name of the person whom it is alleged the defendant robbed, gives sufficient notice without particularly describing the property he allegedly took or intended to take in the course of committing theft.

■ In the instant case, appellant's motion to quash the indictment complained of both the property description contained within the indictment and the failure to allege the name of the owner of the property. We find that the indictment, as set out above, gives appellant sufficient notice of the offense with which he was charged. *Hill v. State*, supra. No error is shown in the court overruling appellant's motion to quash.

■ In his seventh and eighth grounds of error, appellant challenges the sufficiency of the evidence to support his conviction. He maintains that there is insufficient evidence as to the elements of consent and ownership. He further urges that the State "failed to put on any evidence justifying a conviction beyond a reasonable doubt."

Ronald King testified that on May 8, 1978, he was employed as the assistant manager for a Pizza Hut restaurant in Waco. King related that on the date in question, he was working both in the kitchen and at the cash register. Three individuals entered the restaurant and ordered a pizza. King stated that appellant approached the cash register in order to pay the bill. Appellant then handed King a small pizza box and directed him to put the money from the cash register inside the box. King testified that appellant's companion was standing near a front door with a handgun. King complied with appellant's request and the two men fled from the restaurant.

Appellant urges the evidence is insufficient as to the element of consent. The record reflects that on direct examination, the prosecutor asked King:

"Q. Okay. Did you give your consent to have this money taken?

"A. No, ma'am."

We find the evidence sufficient to prove that the money was taken without the consent of the complainant. Appellant next contends the evidence is insufficient to prove ownership.

In *Cross v. State*, 550 S.W.2d 61 (Tex.Cr.App.), the defendant was convicted of aggravated robbery. On appeal, he maintained the evidence was insufficient to prove ownership of the property taken from the complaining witness. The record showed that the defendant robbed the cashier at a grocery store in Mineral Wells. This Court found that under the present Penal Code, the evidence is sufficient to show that the property was taken from the care, custody and control of the complaining witness. See *Reese v. State*, 531 S.W.2d 638 (Tex.Cr.App.).

In the instant case, King was employed as the assistant manager for the restaurant. As such, he performed the duties of both cook and cashier. The money was taken from him while he was performing his duties as cashier. We conclude that the evidence is sufficient to show that the property was taken from his care, custody and control. We find the evidence sufficient to prove the element of ownership and likewise sufficient to support appellant's conviction for aggravated robbery. Appellant's seventh and eighth grounds of error are overruled.

In his second ground of error, appellant maintains the court erred in allowing his common-law wife to testify against him. He contends that her testimony was erroneously admitted in violation of Art. 38.11, V.A.C.C.P.

Appellant testified that his common-law wife is Clara Turnbough. He related that he had told numerous individuals that he and Turnbough were married. He further stated that they had lived together for several days. Appellant's mother, Dorothy

Hightower, testified that Turnbough had told her that she and appellant were married. Hightower further related that her son had told her that Turnbough was his wife.

Turnbough related that she and appellant never had an agreement to have a common-law marriage. She further stated that she never had any intention to marry appellant. Turnbough related that she had never represented to anyone that appellant was her husband. Finally, she stated that she had never lived with appellant.

The elements of a common-law marriage are an agreement presently to become man and wife, a living together pursuant to the agreement and cohabitation as husband and wife, and a holding out of each other to the public as husband and wife. *Archie v. State*, 511 S.W.2d 942 (Tex. Cr.App.). A claim of common-law marriage is closely scrutinized by the courts and the agreement of marriage should be specific on both sides. *Chatman v. State*, 513 S.W.2d 854 (Tex.Cr.App.).

In *Krzesinski v. State*, 169 Tex.Cr.R. 178, 333 S.W.2d 149, the defendant maintained the court erred in allowing his common-law wife to testify against him at trial. The evidence revealed that the defendant offered evidence seeking to establish that the witness was in fact his common-law wife. However, there was also evidence which tended to show that their relationship had been only an illicit one. The Court concluded that the evidence did not show as a matter of law that the witness was the common-law wife of the defendant. The Court therefore found that the failure to complain that the issue was not submitted to the jury, or to request that it be submitted, waived the error which the defendant sought to present. Id. 333 S.W.2d at 151.

In the instant cause, there was conflicting evidence as to whether Turnbough was in fact appellant's common-law wife. Appellant and his mother presented evidence which tended to establish that Turnbough was in fact his common-law wife. On the other hand, Turnbough denied that she and appellant had a common-law marriage. The existence of a common-law marriage is an issue of fact to be determined by the trier of the fact. *Warren v. Kyle*, 565 S.W.2d 313 (Tex.Civ.App.—Austin 1978, no writ). We find that appellant's failure to complain that the issue of a common-law marriage was not submitted to the jury, or to request that it be submitted, waived the error he now seeks to present. *Krzesinski v. State*, supra. Appellant's second ground of error is without merit.

In his third ground of error, appellant further contends the court erred in permitting Turnbough to testify as a witness for the State. He maintains that she should not have been allowed to testify because her name did not appear on a witness list which was provided to appellant pursuant to a motion for discovery.

The record reflects that on August 3, 1978, the court granted appellant's motion for discovery and ordered the State to furnish a list of the names of the witnesses the State, in good faith, intended to use upon its case in chief. Such list was to be furnished to appellant prior to the voir dire examination of the jury panel. The jury was selected and sworn on August 7, 1978. When Turnbough was called as a witness by the State, appellant objected to her testimony on the basis that her name had not been included upon the witness list furnished by the State. In this regard, the prosecutor stated as follows:

"MR. MALONE (Prosecutor): I did on that Thursday or Friday, or whenever it was that Mr. Tandy called, I told him to assume that we were going to use her. That although I was not positive of it, that for his—for the sake of his Defense, he ought to assume she was going to be called.

"MR. TANDY (Defense Attorney): Your Honor, the Court entered an order that he would furnish me names of all witnesses prior to voir dire. He furnished me a list and when I was talking to the jury yesterday I asked if these were all. And he said, 'These right here are the

ones.' He never furnished Clara Turnbough's name.

"MR. MALONE: Well, I told him to assume that she would be used, Your Honor."

▮ In *Young v. State*, 547 S.W.2d 23 (Tex.Cr.App.), it was held that the witnesses should be disclosed if they will be used by the State at any stage in the trial. If a witness who was not included within a witness list is permitted to testify, the standard of review is whether the trial court abused its discretion in allowing such witness to testify. *Lincoln v. State*, 508 S.W.2d 635 (Tex.Cr.App.). Among the factors which will be considered by this Court in determining whether there has been an abuse of discretion is a showing of bad faith on the part of the prosecutor in failing to disclose ahead of time the name of the witness. See *Clay v. State*, 505 S.W.2d 882 (Tex.Cr.App.). Another such factor is whether the defendant can reasonably anticipate that the witness would testify although his or her name was not included within the witness list. See *Smith v. State*, 540 S.W.2d 693 (Tex.Cr.App.).

▮ In the instant cause, it is undisputed that Turnbough's name did not appear upon the witness list. However, before that list was even furnished to appellant, the prosecutor informed counsel that he should "assume she was going to be called" as a witness. The record thus reveals that appellant could have reasonably anticipated that Turnbough would in fact be called as a witness by the State. *Smith v. State*, supra. Further, appellant has not shown bad faith on the part of the prosecutor in failing to include Turnbough's name on the witness list. We find no abuse of discretion in the trial court permitting Turnbough to testify. Appellant's third ground of error is overruled.

In his fifth ground of error, appellant maintains the court erred in admitting a letter into evidence. The letter contains an admission to the instant offense. He contends the letter was inadmissible because it was not shown to have been made in compliance with Art. 38.22, V.A.C.C.P.

The letter in question was written by appellant to Turnbough while he was incarcerated in the McLennan County Jail. By its very terms, Art. 38.22, Sec. 5, supra, has no application to a statement "that does not stem from custodial interrogation." See *Stone v. State*, 583 S.W.2d 410 (Tex.Cr. App.); *McGilvery v. State*, 533 S.W.2d 24 (Tex.Cr.App.). Appellant's reliance on *Pierson v. State*, 145 Tex.Cr.R. 388, 168 S.W.2d 256, is misplaced. There, it was stated that a letter written by the defendant while in jail would be covered by the same rules as applicable to oral confessions. However, the holding in Pierson was based upon former Art. 727 of the 1925 Code of Criminal Procedure. Our current statute, Art. 38.22, Sec. 2, supra, relates to written statements made by an accused as a result of custodial interrogation.

▮ In the instant cause, the record does not reflect that the letter which appellant wrote to Turnbough was the result of custodial interrogation. We find that admission of the letter did not violate Art. 38.22, supra. Appellant's fifth ground of error is without merit.

In his sixth ground of error, appellant further contends the court erred in admitting into evidence the letter written to Turnbough. He maintains that the letter was inadmissible because the State failed to furnish a copy of the letter to appellant pursuant to a motion for discovery.

▮ This Court has held that an error presented on appeal must comport with the objection raised at trial. See *Nelson v. State*, 607 S.W.2d 554 (Tex.Cr.App.); *Simpkins v. State*, 590 S.W.2d 129 (Tex.Cr.App.). The record fails to reflect that appellant objected to the admissibility of the letter upon the basis that the State had failed to comply with his motion for discovery. Therefore, the ground of error urged upon appeal differs from the objection voiced at the time of trial. Nothing is presented for review.

In his fourth ground of error, appellant maintains the court erred in failing to grant an oral motion for continuance which was

made during the trial. He maintains that he was "surprised" by the State calling Turnbough as a witness.

 When by some unexpected occurrence during trial, the defendant is so taken by surprise that a fair trial cannot be had, a motion for continuance is addressed to the sound discretion of the court. *Garcia v. State,* 581 S.W.2d 168 (Tex.Cr.App.); Art. 29.13, V.A.C.C.P. There is no abuse of discretion in failing to grant an oral motion for continuance. *Ortiz v. State,* 154 Tex. Cr.R. 52, 224 S.W.2d 883.

 As noted above, some three or four days before trial, the prosecutor informed appellant's counsel that he could "assume" that Turnbough would be called as a witness in the trial of the case. Under such circumstances, we find no abuse of discretion in the court refusing to grant appellant's oral motion requesting a continuance based upon Turnbough being allowed to testify as a witness for the State. Appellant's fourth ground of error is without merit.

In his ninth ground of error, appellant contends the court erred in overruling his objection to alleged improper jury argument. He maintains the argument was improper in that it implied that appellant was guilty of two extraneous murders.

The argument of which appellant now complains occurred at the conclusion of the guilt or innocence phase of the trial when the prosecutor argued as follows:

"What about Clara Turnbough? Well, he began talking about our investigator talking to Clara about two murders. And he said, 'Yeah, they asked her if they had suspects and then we ended the question—the State ended the question.' Well, if you will remember, we ended the questions because there are only certain questions we can ask. You know, we have legal questions. You have heard people making objections. We asked all the questions that we legally could ask. And then you heard Mr. Tandy stand up and object, that's why we quit asking the questions, because we asked all the ques-

tions we legally could. Clara knew something about them. Remember, Clara was not the suspect. Clara was not a suspect in those two murders, but she knew something about them. Of course, you know, she had been running around with Jimmy Hightower for the last six months...."

 In order to be appropriate, jury argument must fall within the categories of (1) summation of the evidence; (2) reasonable deduction from the evidence; (3) answer to argument of opposing counsel; or (4) a plea for law enforcement. *Alejandro v. State,* 493 S.W.2d 230 (Tex.Cr.App.). In the instant case, there was evidence produced at trial that Turnbough was being questioned relative to two unsolved murders. The evidence further revealed that she was not a suspect in those offenses. Likewise, there was evidence that Turnbough had been acquainted with appellant for the last six months.

 We do not find that the complained of argument either directly or indirectly indicated that appellant was in some way involved in the two extraneous murder offenses. The facts reveal that Turnbough knew something about the two extraneous murder offenses and that she had been "running around" with appellant. These two facts do not act so as to establish that appellant was in some way involved in the murder offenses or that Turnbough's knowledge of the offenses came from appellant. We find that the complained of argument was based upon evidence presented at trial and was therefore proper. *Griffin v. State,* 554 S.W.2d 688 (Tex.Cr.App.). No error is shown in the court overruling appellant's objection.

The judgment is affirmed.

ODOM, Judge, dissenting.

I dissent to the majority's disposition of appellant's ninth ground of error, which addresses jury argument that implied appellant was guilty of two extraneous murders. The argument, set out in the majority opinion, concluded:

"Clara was not a suspect in those two murders, but she knew something about them. Of course, you know, she had been running around with Jimmy Hightower for the last six months. But we asked all the questions—

"MR. TANDY: Judge, we're going to object to that, that's—

"THE COURT: I don't want any demonstrations from the audience whatsoever. And I don't want people traipsing in and out. Mr. Nelson, would you take care of that situation?

"MR. TANDY: We're going to object at this time to the prosecutor implying that Mr. Jimmy Hightower was guilty of an extraneous offense, which she was talking about. And we would like to instruct the jury not to consider that for any purpose.

"MR. MALONE: Well, Your Honor, she's just argued the evidence. The evidence shows—

"MR. TANDY: She didn't argue any evidence.

"MR. MALONE—that she's been running around; that she and Jimmy Hightower have known each other since April or sometime.

"THE COURT: I overrule the objection."

The objection was timely and meritorious.

I cannot agree with the majority's conclusion that the jury argument complained of "[n]either directly [n]or indirectly indicated that appellant was in some way involved in the two extraneous murder offenses." The combination of these two seemingly unrelated facts was clearly intended to suggest to the jury that appellant was implicated in the extraneous offenses. I respectfully dissent.

1. On original submission, a panel of this Court affirmed appellant's conviction. For a more detailed recitation of the facts of this cause, the reader is directed to the panel opinion. Because the opinion implies there was only one prosecutor, Lynn Malone, in this cause, when in fact there were two prosecutors, I have taken the liberty of putting in this opinion the name of the other prosecutor, Karen Matkin, who made the complained of jury argument,

Before the Court en banc.

## OVERRULING OF APPELLANT'S MOTION FOR REHEARING WITHOUT WRITTEN OPINION

TEAGUE, Judge, dissenting.

This Court previously granted appellant's motion for rehearing to reconsider the question, whether or not the jury argument of Karen Matkin, one of the prosecuting attorneys in this cause, constitutes reversible error.[1] Today, a majority of this Court overrules without written opinion the appellant's motion, to which ruling I respectfully dissent.

The facts of this cause are rather simple. Appellant, Clara Turnbough, and Nathan Ray were all parties to the robbery of Ronald King, the assistant manager of a Pizza Hut Restaurant in the City of Waco. Appellant and Ray actually committed the robbery, with Turnbough acting as the "get away driver" of the automobile in which all three left the premises after the robbery had occurred. All three were subsequently apprehended in Pensacola, Florida, but were later returned to Waco after charges were filed against them for committing the King robbery. Appellant was tried separately from Ray and Turnbough, but during the appellant's trial Turnbough testified for the State.

During the appellant's trial, George Foster, a district attorney's investigator, testified that shortly before appellant's trial commenced, he had conversations with Turnbough about the King robbery. However, he also testified on direct examination by one of appellant's counsel, Alex Tandy, that he also had had conversations with Turnbough about "other matters." On cross-examination by Malone, one of the

which argument I will address in this opinion. A majority of the panel in its opinion rejected the appellant's complaint, holding that the argument of Matkin neither directly nor indirectly indicated that appellant was someway implicated in two extraneous murder offenses, and it was also held that the argument was based upon the evidence adduced at trial. Odom, J. filed a dissenting opinion to the majority's opinion by Davis T., J.

prosecutors, he was asked what the "other matters" were, but Tandy's objection to the question was sustained. Nevertheless, Malone asked, without objection from either of appellant's attorneys, the following question, and received the following answer from Foster.

Q: All right. George, when you were talking to Clara about these *other matters*, were these things in which she was suspected of some violations of the law?
A: No, sir. (Emphasis added).

On redirect examination, Tandy asked Foster the following questions, and received the following answers:

Q: Mr. Foster, why were you over there is—just how come you to be over there yesterday to talk with Clara Turnbough?
A: I don't believe I was over there yesterday.
Q: Or whenever you were, the last time you were over there to talk to her—this morning—this morning how come you to be over there and just happen to be talking with her?
A: This morning I went and got her and brought her over here.

Malone, now seeing that the door was slightly ajar, on recross examination and without objection, asked Foster the following questions and received the following answers:

Q: *Have you gone up and talked to her in the jail about this case before, George?*
A: *This case?*
Q: *Uh-huh.*
A: *No, sir.*[2] (Emphasis added).
Q: You talked to her about other matters in every instance, isn't that right?
A: Yes, sir, that's correct.
Q: If Mr. Tandy wants to know how come you were up there talking to her, tell the jury why you were up there talking to her.
A: We were talking to her about two unsolved murders.

Q: All right. That you thought she might have some knowledge about but she was not a suspect. Is that correct, sir?
A: That's correct.
Q: Just answer this yes or no: Did you have suspects?
A: Yes, sir.

I find that this was the first real injection into the case of any possible extraneous offenses.

Tandy, on further redirect examination, closed out the questioning on the subject by asking Foster the following questions and receiving the following answers:

Q: Have you charged somebody in that?
A: No, sir.
Q: In murder?
A: No, sir.

During final argument, Matkin argued as follows:

What about Clara Turnbough? Well, he began talking about our investigator talking to Clara about two murders. And he said, 'Yeah, they asked her if they had suspects and then we ended the question—the State ended the question.' Well, if you will remember, we ended the questions because there are only certain questions we can ask. You know, we have legal questions. You have heard people making objections. We asked all the questions that we legally could ask. And then you heard Mr. Tandy stand up and object, that's why we quit asking the questions, because we asked all the questions we legally could. Clara knew something about them. Remember, Clara was not the suspect. Clara was not a suspect in those two murders, but she knew something about them. Of course, you know, she had been running around with Jimmy Hightower for the last six months.[3]

\* \* \* \* \* \*

---

2. The record reflects, through Foster's testimony not shown here, that when he had his conversation with Turnbough about the King robbery, that conversation occurred at a location other than the county jail.

3. Though appellant objected to the argument, his objection was overruled by the trial court.

I find that Matkin's argument fell outside the boundaries of proper jury argument, as enunciated by this Court in *Alejandro v. State*, 493 S.W.2d 230 (Tex.Cr.App.1973), see also *Campbell v. State*, 610 S.W.2d 754 (Tex.Cr.App.1981); *Todd v. State*, 598 S.W.2d 286 (Tex.Cr.App.1980); *Dunbar v. State*, 551 S.W.2d 382 (Tex.Cr.App.1977). By first stating that, "we quit asking the questions, because we asked all the questions we legally could," then juxtaposing the fact that Turnbough was questioned about two extraneous offenses, of murder, for which she was not a suspect, and thereafter closing with the statement, "she had been running around with Jimmy Hightower [the appellant] for the last six months," the probable effect of this argument on the minds of the jurors was to strongly suggest to the jury that the appellant was a primary suspect in the two extraneous offenses of murder. Cf. *Albrecht v. State*, 486 S.W.2d 97, 100 (Tex.Cr.App.1972).

Though a prosecutor may in argument draw from the facts in evidence all inferences that are reasonable, fair and legitimate, see *Alejandro*, supra, he may not use jury argument to get before the jury, either directly or indirectly, evidence which may be outside the record. *Jackson v. State*, 529 S.W.2d 544, 546 (Tex.Cr.App.1975). Matkin was free and at liberty to strike hard blows, but she was not at liberty to strike foul ones, either directly or indirectly. A prosecutor may not make argument that invites speculation by the jurors, and this Court has held that that type argument is even more dangerous than injecting before the jury matters not in evidence, which is clearly improper. By the argument Matkin made, I find that the jurors were left to speculate on whether or not the appellant was under suspicion for committing or being involved in the commission of two unidentified extraneous murder offenses.

In *Berryhill v. State*, 501 S.W.2d 86 (Tex. Cr.App.1973), the prosecutor's argument focused upon questions he had asked the defendant in that cause, which questions were answered in the negative by the defendant. Nevertheless, the prosecutor argued:

Now I can't tell you how I got the things that I was cross-examining him about because here again, I'm on this old tight rope, but stop and think a bit about how his initial response was—

I find the prosecutor's argument in this cause to be analogous to that made in *Berryhill*. In each argument, statements were made to the jury that implied the existence of incriminating evidence which was not presented to the jury by the prosecution.

In *Berryhill*, this Court stated:

\* \* \* \* \* \*

It is our conclusion that the state's reference to matters upon which cross-examination of appellant was based, and its statement that it could not bring those matters to the jury, followed by the invitation to the jury to speculate on what those matters were, constituted an improper representation that there was other evidence of the guilt of appellant not introduced before the jury, but which nevertheless should be speculated upon. The argument in the instant case implied the existence of incriminating evidence which could not be presented. Cf. *Stearn v. State*, Tex.Cr.App., 487 S.W.2d 734.

Argument injecting matters not in the record is clearly improper; but argument inviting speculation is even more dangerous because it leaves to the imagination of each juror whatever extraneous 'facts' may be needed to support a conviction. Logical deductions from evidence do not permit within the rule logical deductions from non-evidence. *Id.* at 87

\* \* \* \* \* \*

This Court has often stated that the purpose and objective of arguments by counsel are to discuss the evidence and to assist the jury in arriving at a proper conclusion of the case from all the facts and circumstances proved and admitted in evidence. Improper implications made in argument are not conducive to the attainment of that objective. *Stearn v. State*, Id. The jury in this cause could have surmised from the complained of argument that the appellant was implicated in two extraneous murder

offenses. The argument complained of was unwarranted and was of such manifest harmful character that it requires this Court to reverse the conviction.

For the above reasons, the appellant's motion for rehearing should be granted by this Court and not overruled without written opinion.

ROBERTS, ODOM and CLINTON, JJ., join.