

# In the
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-24-00185-CR
_____

JONATHAN DAVID BENAMI, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 372nd District Court
Tarrant County, Texas
Trial Court No. 1835799

Before Stevens, C.J., van Cleef and Rambin, JJ.
Memorandum Opinion by Justice van Cleef
Concurring Opinion by Justice Rambin

MEMORANDUM OPINION

Jonathan David Benami appeals his conviction for murder, a first-degree felony, by a Tarrant County jury.[1]  *See* TEX. PENAL CODE. ANN. § 19.02(c) (Supp.).  At issue is the trial court's ruling that Benami failed to properly notify the State of Benami's expert witness as required by the Texas Code of Criminal Procedure.  The trial court precluded Benami from presenting testimony from that witness.

We conclude that Benami did not preserve his argument that the trial court misapplied Article 39.14(b) of the Texas Code of Criminal Procedure[2] and that the trial court did not abuse its discretion in excluding testimony from Benami's proffered expert under the same article.  We affirm the trial court's judgment.

## I.    Background

Law enforcement arrested Benami for a murder that occurred on September 29, 2021.  In November 2022, the trial court found him to be incompetent to stand trial.  Benami remained incompetent for the rest of 2022 and much of 2023.  In February 2024, the trial court found him competent and proceeded with his trial in August 2024.

At a pretrial hearing the morning before voir dire, Benami acknowledged he had not designated an expert witness whose testimony he wanted to proffer at trial.  *See* TEX. CODE CRIM. PROC. ANN. art. 39.14(b).  Benami asked for a continuance so he could comply with

---

[1]Originally appealed to the Second Court of Appeals, this case was transferred to this Court by the Texas Supreme Court pursuant to its docket equalization efforts.  *See* TEX. GOV'T CODE ANN. § 73.001 (Supp.).  We are not aware of any precedent from that court that is inconsistent with our opinion.  *See* TEX. R. APP. P. 41.3.

[2]*See* TEX. CODE CRIM. PROC. ANN. art. 39.14(b) (Supp.).

2

Article 39.14(b) and to do further investigation and preparation for the presentation of mitigation evidence at trial. The State objected that Benami did not comply with Article 39.14(b) and noted (1) that one of Benami's attorneys represented him in another criminal case that had been resolved just days before the murder in this case, (2) that it was aware of at least two interviews with Benami by proffered witness, Dr. Emily Fallis, (3) that the case had been specially set, and (4) that almost three years had passed since the murder. Benami provided no notice to the State of his proposed expert witness, and the trial court excluded her from testifying.[3]

The jury convicted Benami of murder and recommended a sentence of seventy years' incarceration. The trial court sentenced him accordingly, and this appeal followed.

## II.    Article 39.14(b) Argument Not Preserved

First, Benami argues the trial court misapplied the notice requirement of Article 39.14(b). However, Benami did not make his argument to the trial court. "Preservation of error is a systemic requirement that a first-level appellate court should ordinarily review on its own motion." *Mays v. State*, 285 S.W.3d 884, 889 (Tex. Crim. App. 2009) (quoting *Jones v. State*, 942 S.W.2d 1, 2 n.1 (Tex. Crim. App. 1997)). It is "incumbent upon the Court itself to take up error preservation as a threshold issue." *Id.* That said, "we will not be hyper-technical in our examination of whether error was preserved." *Archie v. State*, 221 S.W.3d 695, 698 (Tex. Crim. App. 2007). At the pre-trial hearing, Benami asked the trial court for a continuance because he had not designated Fallis as an expert witness for trial. On appeal, Benami claims the trial court

---

[3]The trial court said that Benami had failed to comply with "the Rules of Evidence," but from the context it was clear the trial court was referring to Article 39.14(b) of the Texas Code of Criminal Procedure. *See* TEX. CODE CRIM. PROC. ANN. art. 39.14(b).

did not correctly interpret and apply Article 39.14(b).  *See* T{\small EX}. C{\small ODE} C{\small RIM}. P{\small ROC}. A{\small NN}. art. 39.14(b).

At issue is the first sentence of Article 39.14(b):

> On a party's request made not later than the 30th day before the date that jury selection in the trial is scheduled to begin or, in a trial without a jury, the presentation of evidence is scheduled to begin, the party receiving the request shall disclose to the requesting party the name and address of each person the disclosing party may use at trial to present evidence under Rules 702, 703, and 705, Texas Rules of Evidence.

T{\small EX}. C{\small ODE} C{\small RIM}. P{\small ROC}. A{\small NN}. art. 39.14(b).  Benami argues that "[o]n a party's request made not later than the 30th day before the date that jury selection in the trial is to begin" should be read to mean "the first-time [sic] jury selection is scheduled to begin."  So, here, jury selection was first set for April 26, 2024, but the trial court rescheduled the trial.[4]  The State requested an expert witness notice on May 10, 2024, and the parties selected a jury on August 26, 2024.  Thus, argues Benami, the State's request was not timely filed (i.e., not thirty days before jury selection was first scheduled to begin) and Benami had no obligation to give notice of his expert witness at all.

But Benami never made that argument to the trial court.  Where an appellate argument does not comport with a trial objection, the appellant has not preserved the matter for our review.  *See* T{\small EX}. R. A{\small PP}. P. 33.1; *Auld v. State*, 652 S.W.3d 95, 109 (Tex. Crim. App. 2022).  We overrule Benami's first point of error.

---

[4]The State requested and received a continuance because it was awaiting DNA test results.

**III. Trial Court Did Not Abuse its Discretion Excluding Benami's Expert Witness**

**A. Standard of Review**

In his second point of error, Benami argues that the trial court abused its discretion in prohibiting Fallis from testifying at trial. "We review a trial court's decision on whether to allow an expert witness to testify on an abuse of discretion standard." *Johnson v. State*, 233 S.W.3d 109, 114 (Tex. App.—Houston [14th Dist.] 2007, no pet.); *Chakravarthy v. State*, 516 S.W.3d 116, 135–36 (Tex. App.—Corpus Christi–Edinburg 2017, pet. ref'd) (quoting *Johnson*, 233 S.W.3d at 114); *see Wood v. State*, 18 S.W.3d 642, 649 (Tex. Crim. App. 2000). "If the trial judge allows a witness to testify who does not appear on the [offering party's] witness list, we consider whether the [offering party]'s actions constitute 'bad faith' and whether the defendant could have reasonably anticipated the witness'[s] testimony." *Martinez v. State*, 867 S.W.2d 30, 39 (Tex. Crim. App. 1993).

> When reviewing a claim such as this, a number of factors surrounding the trial court's decision (and, hence, whether it was an abuse of discretion) must be considered. "Among the factors which will be considered by this Court in determining . . . abuse of discretion is a showing of bad faith on the part of the prosecutor in failing to disclose ahead of time the name of the witness." "Another such factor is whether the defendant can reasonably anticipate that the witness would testify although his or her name was not included within the witness list."

*Nobles v. State*, 843 S.W.2d 503, 514–15 (Tex. Crim. App. 1992) (citation omitted) (quoting *Hightower v. State*, 629 S.W.2d 920, 925 (Tex. Crim. App. [Panel Op.] 1981)).

### 1. Benami's History of Incompetency Before Trial[5]

Benami's case was pending less than three years. The murder occurred on September 29, 2021, and trial began the last week of August 2024. Attorney Scott Palmer filed a notice of representation on October 7, 2021. The first indication of mental illness appears in the record on July 28, 2022, in the form of an invoice for a psychological evaluation of Benami submitted by Emily Fallis, Ph.D., of "Balance Forensic & General Psychological Services, Inc." On August 17, 2022, the trial court signed an order for the examination of Benami for any signs of mental illness or intellectual disability. *See* TEX. CODE CRIM. PROC. ANN. art. 16.22 (Supp.). On November 9, 2022, the trial court issued a warrant for Benami with the notation "[h]old [p]ending emergency competency exam." The following day the court ordered a competency examination to be performed by Dr. Jim Womack. Womack submitted an invoice dated November 14, 2022, on Balance Forensic & General Psychological Services, Inc., letterhead. The invoices submitted by Womack and Fallis were on the same letterhead, included the same case/client identification number, and both identified the examinee as Benami.

On November 15, 2022, based on Womack's examination, the trial court found Benami incompetent to stand trial. The trial court committed Benami to participate in the "Jail-Based Competency Restoration Program" and then, on January 24, 2023, the trial court committed Benami to a mental hospital. The trial court ordered another competency examination on April 28, 2023, this time to be performed by Dr. William Barry Norman, who submitted an invoice dated May 4, 2023. Like the invoices of Womack and Fallis, Norman's invoice identified

---

[5]Benami intended to offer Fallis's testimony about his state of mental health and history of his mental illness as mitigation testimony at punishment.

Benami as the examinee and used the same case/client identification number. By July 31, 2023, Benami apparently had been released from commitment, as he evidenced participation in a status or plea conference with his signature on a court document. On September 29, 2023, the trial court entered another order for examination for mental illness or intellectual disability, again ordering Benami participate in an interview at My Health My Resources (MHMR) of Tarrant County. On that same date, the trial court entered yet another order for a competency examination. Norman submitted another invoice on October 29, 2023. On November 21, 2023, the trial court again ordered that Benami be transferred to a mental hospital.

The trial court signed a final order for a competency examination on February 6, 2024, to be conducted by Norman, and on February 20, 2024, the trial court found Benami competent to stand trial. The case was set for trial in April 2024. As previously noted, on April 26, 2024, the State asked for and received a continuance because it was awaiting DNA test results. The parties tried the case from August 26, 2024, through September 4, 2024. In a hearing after the defense rested, the State withdrew its expert, Dr. Antoinnette McGarrahan, and did not present her for testimony.

### B.      Benami Did Not Comply with Article 39.14(b)

Benami did not comply with Article 39.14(b)'s requirement that, on the request by the opposing party, a party designate the expert witnesses it plans to present at trial.[6] On August 26, 2024, the morning of trial, Benami candidly acknowledged his failure to comply with Article

---

[6]"On a party's request made not later than the 30th day before the date that jury selection in the trial is scheduled to begin . . . the party receiving the request shall disclose to the requesting party the name and address of each person the disclosing party may use at trial . . . ." TEX. CODE CRIM. PROC. ANN. art. 39.14(b).

39.14(b).[7]  Benami asked for a continuance to properly designate Fallis as an expert witness. Michael Levine, who appeared as co-counsel for Benami on Thursday, August 22, 2024, argued for the continuance.[8]  Levine told the trial court that the defense team had spoken to Fallis the day before, a Sunday, while Fallis was out of town.  While one of the defense attorneys had met with Benami's father previously, the defense team had only met with Benami's siblings at the time of trial.  According to Levine, the defense team "learned an incredible amount of information that [went] to the heart of mitigation . . . in regards to [Benami's] childhood, his mental illness, beginning with early high school, work, [Child Protective Services (CPS)] records from the time spent with his mother, who [was] deeply mentally ill, [and] ha[d] been institutionalized before."  Levine told the trial court that the conversation with Fallis the previous day was "the first time [they] discussed in detail what [Fallis] would testify to at trial," and he conceded that that was "inexcusable."

Fallis was "essentially [Benami's] entire mitigation . . . evidence," but, according to Levine, "Fallis [has not] spoken to anyone in [Benami's] family and there's not only no explanation, but there's no excuse."  Benami claimed, "[T]here's just so much mitigation

---

[7]Benami informed the trial court,

> Your Honor, we're going to try and prevail upon the Court -- if this was done properly, we need to try to prevail upon the Court at the very least be able to introduce this evidence at guilt/innocence. . . . But for sure, right now we don't have the mitigation that we know is out there that we could have gotten and we should have gotten. . . .
>     I can't tell you why; I wasn't on the case then.  I can just tell you, Your Honor, that it's basic things that should have been done that were neglected.

[8]Levine's letter of representation was filed at 5:03 p.m. on August 22, 2024.  He joined Benami's defense team led by Scott Palmer.  In arguments, it was discussed that Palmer's firm represented Benami in a Denton County assault prosecution, which was pending when the instant murder occurred.  However, Palmer told the trial court his firm "never met Mr. Benami before the allegation that made the basis of this indictment."

evidence out there that was neglected because people weren't spoken to in time." The State listed "high school records, CPS records," and chronological records from Benami's bond officer, as well as hospital and mental health records the State had acquired and provided to the defense.

In opposing the motion for continuance, the State claimed that Benami had requested funds in December 2021,[9] giving Fallis ample time to interview Benami, and that Fallis had conducted two interviews on or about May 22 and June 4, 2024. The State pointed out that the case was three years old, the defense had had ample opportunity to investigate the case and have Fallis examine Benami, and the trial had been specially set for that date. As for its discovery, the State told the trial court it had "requested any and all mental health records for this defendant," including records from Tarrant County, Tarrant County MHMR, John Peter Smith department, as well as work, school, and family records, which had been compiled by "bond officers that have dealt with [Benami] over the last three years off and on" and included "thousands of pages of records that predate [this] offense." All of those documents had been furnished to the defense in "the last few months [of trial], if not sooner." The State also reminded the trial court that a week prior to trial, at another pre-trial hearing (not contained in the appellate record) and before Levine joined the defense team, the defense told the trial court "that they did not have any concerns regarding [Benami's] competency."

---

[9]The State advised, "The request for the Court to provide additional funds was requested back I believe it was December of 2021." There is no request for funds in the clerk's record until July 29, 2022, when an invoice for an examination by Fallis was submitted to the court.

### 1. The Offer of Proof

Benami presented an offer of proof from Fallis. She described Benami as "fit[ting] the diagnosis of schizoaffective disorder." Fallis continued by saying that that is "a serious mental illness that includes both psychotic symptoms like hallucinations and delusions and disorganized thinking . . . also . . . disorganized odd behavior." Although there were some records to which she had not been privy and she was unable to "interview[] . . . people related to the case," Fallis also opined that Benami "was mentally ill at the time of the murder and that his mental illness significantly affected his behavior." Benami's attorney asked how long Fallis would need to render an opinion "in regards to either insanity or . . . punishment mitigation" if she received everything she needed that day, and Fallis answered, "Maybe another week." That was on August 29, 2024, the fourth day of trial. Fallis was asked to evaluate Benami for competency and insanity, but she did not "conduct a full forensic examination" because she was not provided sufficient records and had not been provided access to people "related to the case."

According to Fallis, there was then "a long period where [she] didn't even know what was happening in the case[,] and [she] was contacted a couple years later and asked to look at his competence to stand trial at that point." She claimed not to have received any records or documents to review, except from the defense, and Fallis stated that nobody provided family information to her, such as any history of mental illness. Fallis developed her opinions despite what appears to have been limited access to background information that she would usually be provided before being asked for opinions or diagnoses.

Fallis said that she had met with Benami four times. As noted herein, there was an invoice submitted from her suggesting an evaluation in July 2022. Fallis told the trial court that she "was contacted in October of 2021" and that someone provided a court order to her in November 2021. She "was asked to just generally . . . do an evaluation, looking at competence, mental state at the time of offense, just, again, generally to evaluate Mr. Benami." However, after a couple more questions, Benami's counsel reminded Fallis of the date of the murder and asked, "[H]ow long after that do you think you saw him?" Fallis responded, "[T]he first time I saw him was in December of 2021." The parties seemed to agree that Fallis saw Benami in May and June 2024, just before trial.

Fallis did find Benami incompetent to stand trial, at some point, based on "[h]is behavior with [her] and also his behavior that was reported by the attorneys" who had "difficulty working with [Benami]." Later, after another examination, she found Benami competent to stand trial.[10]

**C.    Analysis**

First, we conclude the record does not show bad faith on Benami's part in failing to comply with Article 39.14(b)'s requirement. Benami's failure to properly disclose his expert witness seems born out of sheer negligence. "Extreme negligence or even recklessness on the . . . part [of the offering party] in failing to comply with a discovery order will not, standing alone, justify the sanction of excluding relevant evidence." *Francis v. State*, 428 S.W.3d 850,

---

[10]Benami's counsel asked Fallis, "And did you perform another evaluation later on in which you found [Benami] competent?" Her answer was somewhat confusing: "Yes. I did see him after a report in which I said he was not competent and thought he was competent at that time later after that report, but I did not write another report."

11

855 (Tex. Crim. App. 2014), *abrogated by State v. Heath*, 696 S.W.3d 677 (Tex. Crim. App. 2024). However, we find the State could not have anticipated Benami's plan for Fallis to testify.

Nothing in the record suggests the State should have anticipated Fallis's testimony as an expert witness for Benami. Fallis had four meetings over a period of more than two years. Other psychological professionals, Norman and Womack, also met with and evaluated Benami.

Benami, in his appellate brief, refers to the invoice submitted by Fallis in July 2022. As we pointed out earlier, Fallis submitted that invoice on Balance Forensic & General Psychological Services, Inc., letterhead. The invoice is "from" Fallis, and has specific identifying information including Benami's name and his case/client identification number. In November 2022, another invoice from Balance Forensic & General Psychological Services, Inc., was filed with the court. That invoice was submitted by Womack and was also for an evaluation of Benami, with the same case/client identification number. However, Benami conflates those two examinations to suggest Fallis was responsible for both by stating, "Then, in November 2022, Dr. Fallis (or Appellant's attorney) submitted another invoice to the court." He makes that statement and cites to the "Womack" invoice noted above. Both invoices bear the case/client identification number 1703261, but Benami ignores the differing psychologists. Later, on May 4, 2023, Norman submitted a third invoice on his own letterhead.[11] So, there are three invoices in the record, submitted by three different psychologists.

The only other place Fallis is mentioned in the record before us is at one of about three dozen "**Sources of Information**" reviewed by the State's expert, McGarrahan, who examined

---

[11]Although submitted from a different provider, that invoice also has the same case/client identification number: 1703261.

Benami in August 2024, at the State's request. The State filed a *Lagrone* motion[12] to have Benami subject to a "psychiatric examination" by McGarrahan as the case drew close to trial. Benami cites the motion as evidence the State knew he intended to call Fallis to testify. In its motion, the State said, "The attorneys for the Defendant have indicated on May 10, 2024, that they have experts that need access to the Defendant in preparation for trial." There is no mention of Fallis or the other two doctors that examined Benami in the State's motion. McGarrahan's "**Sources of Information**" include the reports by Womack and Norman. And the only document in the clerk's record that was filed on or around May 10, 2024, was the State's request for designation of Benami's experts. None of that information demonstrates that the State should have anticipated Fallis's testimony.

McGarrahan also testified at a hearing outside of the jury's presence. When asked who had seen Benami for competence, McGarrahan said some "people would have seen him repeatedly through the competency restoration program," a psychiatrist (whose name might have been Dr. Benjamin), and a "Dr. Mimms, who saw him on bond." There are no details in the record about those providers, but McGarrahan testified she had reviewed all reports from all doctors who had "seen" Benami since the offense.

---

[12] In *Lagrone v. State*, 942 S.W.2d 602, 609–12 (Tex. Crim. App. 1997), the Texas Court of Criminal Appeals held that a defendant's presentation of psychiatric testimony on future-dangerousness is a "limited" waiver of Fifth Amendment rights entitling the State to compel the defendant to an examination by the State's psychiatric expert for rebuttal purposes "provided, however, that the rebuttal testimony is limited to the issues raised by the defense expert." *Lagrone*, 942 S.W.2d at 610, 611 (Tex. Crim. App. 1997) (quoting *Soria v. State*, 933 S.W.2d 46, 58, 59 (Tex. Crim. App. 1996)). Hence, the term "*Lagrone* motions." "*Lagrone* motions are fairly common in capital cases where experts are involved." *Williams v. State*, 707 S.W.3d 233, 239 (Tex. Crim. App. 2024); *see Saldano v. State*, 232 S.W.3d 77, 82–83 (Tex. Crim. App. 2007).

Also, Benami did not file a notice of intent to raise an insanity defense. *See* TEX. CODE CRIM. PROC. ANN. art. 46C.051. With no insanity defense announced and Benami having announced, a week before trial, satisfaction with the determination of his competency,[13] we cannot see how or why the State should have reasonably anticipated the trial testimony of Fallis in particular.

The rest of Benami's arguments that the State should have anticipated Fallis's testimony are conclusory: "All of the evidence confirms that the State was aware that Dr. Fallis might be a witness in either guilt/innocence or punishment. Indeed, the State retained its own expert, who . . . examined [Benami], and the State consulted the expert about how to approach the case." Benami seems to base those statements on Fallis's four meetings with him over a period of two or more years. However, there is nothing in the record suggesting that the State should have anticipated Fallis's testimony, especially when at least two other psychologists evaluated Benami over the years and at least one psychiatrist.

Benami's appellate argument continues, "[E]ither [Benami] or Dr. Fallis filed her records with the [trial] court and the State's own motion explained that counsel for [Benami] intended to call Dr. Fallis." That seems to refer to the State's *Lagrone* motion, seeking examination as trial approached. In its *Lagrone* motion, the State said, "The attorneys for the Defendant have indicated on May 10, 2024, that they have experts that need access to the Defendant in preparation for trial." In no way did the State's *Lagrone* motion mention Fallis, Norman, or

---

[13]At the pretrial hearing, the State said, "[T]here was also said to the [c]ourt that they did not have any concerns regarding his competency, that they accepted the competency evaluation done more recently in August." It is worth pointing out that, after three days of testimony and Fallis's offer of proof, Benami moved for a mistrial, claiming to have "met the legal definition for insanity at the time of the offense." But, again, Benami filed no pretrial motion to pursue an insanity defense.

14

Womack or suggest that any particular psychologist or care-provider was a defense expert or was expected to testify at trial. Benami also complains that the State's discovery listed "*182* 'experts' of which *seventy-three* were for mental health" and thus "the equities of this case favor [Benami]." Benami offers no authority for that position or why it establishes that the State should have reasonably anticipated that Fallis, as opposed to any other mental health expert, would testify.

### D. Case Law

In *Chakravarthy*, the defendant failed to timely notify the State of one of its intended expert witnesses. *Chakravarthy*, 516 S.W.3d at 134. Although the defendant "produce[d] a fax cover sheet that showed transmission" of his expert witness disclosure, *id.* at 136, he "could not produce the confirmation sheet," *id.* at 134, and the State claimed surprise when he called the witness to the stand. At a hearing on the matter, the trial court found Chakravarthy "had presented no evidence . . . that notice was given." *Id.* at 136. The court of appeals upheld the trial court's exclusion of Chakravarthy's witness. *Id.*

*Chakravarthy* cited *Johnson*. In *Johnson*, the court of appeals found that "the State could not reasonably have anticipated that a clinical psychologist would be called by appellant to testify during the punishment phase of the trial, and therefore could not prepare to meaningfully cross-examine or decide to produce its own expert witness in rebuttal." *Johnson*, 233 S.W.3d at 115. The *Johnson* court, in reaching that result, adopted the reasoning of our sister transferor court of appeals in *Strawn v. State*, No. 02-02-00170-CR, 2003 WL 21235537, at *2–4 (Tex.

15

App.—Fort Worth May 29, 2003, pet. ref'd) (per curiam) (not designated for publication).[14] The trial court in *Strawn* excluded the defendant's proffered expert when the defendant did not notice his identity upon the State's request. *Strawn*, 2003 WL 21235537, at \*2. Although the State was aware that an expert had performed a psychological examination of Strawn, there was "no other evidence . . . that [Strawn] intended to use" the proffered expert at trial.[15] *Id.* at \*3.

### E.    Application

The trial court acted in compliance with the requirements of Article 39.14(b). While there is no indication that Benami acted in bad faith, based on the record before us, the State could not have reasonably anticipated Fallis's testimony. *See Nobles*, 843 S.W.2d at 514–15; *Chakravarthy*, 516 S.W.3d at 136. Fallis was one of several mental health professionals who evaluated Benami in the three years before trial, but on this record, that does not show that "the opposing party could have reasonably anticipated that the undisclosed witness would testify." *Chakravarthy*, 516 S.W.3d at 136 (quoting *Johnson*, 233 S.W.3d at 115).

We overrule Benami's second point of error.

## IV.    Conclusion

We overrule both points of error. We affirm the trial court's judgment.

Charles van Cleef
Justice

---

[14]*Strawn*, of course, as an unpublished opinion "ha[s] no precedential value." TEX. R. APP. P. 47.7. So, we accord *Strawn* no precedential value and yet "take guidance" from it "as an aid in developing reasoning that may be employed" in this situation. *Rhymes v. State*, 536 S.W.3d 85, 99 n.9 (Tex. App.—Texarkana 2017, pet. ref'd) (quoting *Carrillo v. State*, 98 S.W.3d 789, 794 (Tex. App.—Amarillo 2003, pet. ref'd)).

[15]Although not explicit, it appears that the proffered expert witness conducted the psychological evaluation. *Strawn*, 2003 WL 21235537, at \*3.

# CONCURRING OPINION

The parties did not brief this Court regarding recent, and in my view, controlling authority from the Texas Court of Criminal Appeals. *See Heath*, 696 S.W.3d at 699.[16] As a result, the analysis turns, in large part, on the "bad faith" concept from thirty-year-old cases from the early 1990s,[17] which consequently, predate the 2013 Michael Morton Act by two decades.[18] The analysis additionally turns on the negligence rule of *Francis* (that negligence by the offering party will not result in exclusion) even though *Francis* has been abrogated by *Heath*.[19] That is the analysis resulting from how the parties have framed the issues.

*Heath* held that "the old concept of 'bad faith' no longer applie[s] to Article 39.14." *Heath*, 696 S.W.3d at 707.[20] It did so based on the Michael Morton Act's amendment of Article

---

[16]The State did mention *Heath* in its brief, but on the question of statutory construction raised by Benami's assertion on appeal that the State's discovery request was untimely.

[17]*See* majority opinion at Section III.A (quoting *Nobles*, 843 S.W.2d at 514–15; *Martinez*, 867 S.W.2d at 39); Section III.C ("First, we conclude the record does not show bad faith on Benami's part in failing to comply with Article 39.14(b)'s requirement.").

[18]*See* Michael Morton Act, 83d Leg., R.S., ch. 49, 2013 Tex. Gen. Laws 106. "The wrongful conviction of Michael Morton provided a significant spark the Legislature needed to *completely change* criminal discovery in Texas." *Watkins v. State*, 619 S.W.3d 265, 274–75 (Tex. Crim. App. 2021) (emphasis added). "A simple side-by-side comparison shows that the Michael Morton Act did not merely amend a portion of Article 39.14(a); it revamped Article 39.14 completely. It was, as the State agrees, an overhaul of discovery in Texas." *Id.* at 277.

[19]*See* majority opinion at Section III.C (citing *Francis*, 428 S.W.3d at 855, *abrogated by Heath*); Section III.C ("Benami's failure to properly disclose his expert witness seems born out of sheer negligence.").

[20]Before *Heath* declared "bad faith" an "old concept" regarding Article 39.14, the Texas Court of Criminal Appeals had described the defendant's discovery obligations under 39.14(b) as limited, but reciprocal to those of the prosecution under 39.14(a). *Heath*, 696 S.W.3d 707; *see Pope v. State*, 207 S.W.3d 352, 360 (Tex. Crim. App. 2006). Indeed, *Pope* spoke specifically to the defense's obligation to disclose expert witnesses. *Pope*, 207 S.W.3d at 360 ("[A]rticle 39.14(b) of the Texas Code of Criminal Procedure was amended in 1999 to provide for limited reciprocal discovery of the opposing side's potential expert witnesses."); *see also Strawn*, 2003 WL 21235537, at *2 (When considering "a defendant's failure to timely disclose the identity of testifying experts pursuant to a pretrial discovery order," the Second Court of Appeals "look[ed] to cases discussing sanctions permitted to remedy the State's failure to timely disclose expert witnesses for guidance.").

39.14. *Id.* at 692. *Heath* also addressed the source and scope of a trial court's authority to fashion remedies for discovery violations. *Id.* at 706–08. They are a matter of the trial court's "inherent authority." *Id.* at 706–07. Before the Michael Morton Act, "there was no general right to discovery and Article 39.14 required a showing of good cause and the entry of a trial court order for discovery." *Id.* at 706. As a result, "cases analyzed the remedy for a statutory discovery violation as a sanction for the violation of *a court order*." *Id.* (emphasis added). Now, however, discovery requirements are included in Article 39.14 itself. *Id.* at 707. Here, for example, Benami acknowledges the defendant's duty to disclose experts is found in Article 39.14(b) (in his second issue) but asserts (in his first issue) that the State did not make a timely request so as to invoke Benami's statutory duty under Article 39.14(b).

Since the parties did not brief *Heath*, the majority does not address it. Reason not to do so can be found in *Heath* itself. *See id.* at 706 ("[O]ur prior cases focused on exclusion as a remedy in the context of bad faith because those were the arguments raised, not because the trial court's inherent authority is so limited."). Further, this is an unpublished opinion. *See Williams v. State*, 603 S.W.3d 439, 444 (Tex. Crim. App. 2020) ("[T]he court of appeals's decision to not publish its opinion reflects its intent to not establish a precedent." (citing TEX. R. APP. P. 47.7(a))). Further still, there is the concern that filling in gaps in the parties' briefing veers towards advocacy: "When an appellant has narrowed [his] arguments on appeal to address only a particular basis for disturbing a trial court's ruling, it is not for the appellate court to then scour the record in search of other possible bases for reversing the trial court's ruling on appeal." *Wolfe v. State*, 509 S.W.3d 325, 345 (Tex. Crim. App. 2017). Those are compelling reasons.

18

On the other hand, when the parties miss a recent, significant Texas Court of Criminal Appeals case, we are not required to go along with them in muddying the waters of the law. *See Oliva v. State*, 548 S.W.3d 518, 520 (Tex. Crim. App. 2018) ("We, of course, are not bound by any agreement or concessions by the parties on an issue of law."); *Serrano v. State*, 636 S.W.3d 717, 722–23 (Tex. App.—Fort Worth 2021, pet. ref'd) (citing *Oliva*); *Young v. United States*, 315 U.S. 257, 259 (1942) ("[T]he proper administration of the criminal law cannot be left merely to the stipulation of parties.").

The above had me teetering between these approaches. What follows tipped me into this concurrence.

In addition to speaking to the substance of discovery obligations, *Heath* spoke to how a trial court's decision regarding discovery violations should be reviewed. *Heath*, 696 S.W.3d at 688–89. In one sense, there is nothing new in *Heath*; it used the familiar "zone of reasonable disagreement" gauge when conducting abuse-of-discretion review. *Id.* at 689. But in a significant way, *Heath* is new. As seen above, *Heath* resolved a previously unresolved question of whether a showing of bad faith is required for a discovery violation to result in the exclusion of evidence. *Id.* at 683 ("This case also requires us to consider whether a trial court has the authority to exclude evidence that was not timely disclosed by the State absent a showing of bad faith or prejudice."). Having declared the concept of bad faith outdated, *Heath* then spoke directly to the application of the abuse of discretion when reviewing remedies imposed by the trial court for discovery violations:

> We acknowledge that a continuance would be a much more restrained solution. But that's not the question before us. The question before us is whether the trial

19

court had the authority to impose the remedy it did. That the trial court could have imposed a lesser remedy, assuming the formal requirements for a continuance were met, does not mean the trial court abused its discretion by excluding the evidence in this case. It may very well be that reasonable jurists could disagree about the appropriate remedy in a particular case, but unless the trial court's decision is outside of the zone of reasonable disagreement, this Court will not overturn its ruling. We agree with the court of appeals that the trial court was within its discretion to fashion a remedy it deemed appropriate.

> . . . .

> . . . . While exclusion was not the only remedy available to the trial court, it was not a remedy that was beyond the trial court's discretion to impose.

*Id.* at 707–08 (footnote omitted) (citation omitted).

Reviewing a remedy for a discovery violation is what we are doing here. In my estimation, *Heath* bears discussion; it is too important for too many reasons. The first reason is that *Heath* explains how to apply the abuse of discretion standard of review to an exclusion of evidence as a remedy for a discovery violation. But it is hard to stop there, because what *Heath* has to say about the application of the standard of review is linked to what *Heath* has to say on the substance.

The Second Court of Appeals is aware of the significance of *Heath*. *See, e.g.*, *Hance v. State*, 714 S.W.3d 775, 809 (Tex. App.—Fort Worth 2025, no pet.) (citing *Heath*, 696 S.W.3d at 703); *State v. Johnson*, No. 02-24-00062-CR, 2024 WL 5162689, at *14, *18–19 (Tex. App.— Fort Worth Dec. 19, 2024, pet. ref'd) (mem. op., not designated for publication). We stand in their shoes. *See* TEX. R. APP. P. 41.3. My best guess is that, rather than accepting the outdated framework presented by the parties, our sister court would have looked to *Heath*. I do not, however, believe that would have changed the outcome. On August 22, 2024, additional counsel

for Benami, Levine, filed a notice of appearance. Four days later, on August 26, 2024, the date voir dire was set to begin, Levine appeared before the trial court in person. Levine stated, "[T]here's been a failure on the Defense's part to pursue a number of issues that are relevant to guilt/innocence and punishments. . . . Dr. Fallis was never asked to opine, to interview, to do anything in regards to potential insanity at the time of the event." Levine continued, "I can't tell you why; I wasn't on the case then." The trial court, therefore, had reason to deny the late designation of Fallis. In its own decisions, the Second Court of Appeals has emphasized the "restrained solution" aspect of *Heath*. *Johnson*, 2024 WL 5162689, at *19 (quoting *Heath*, 696 S.W.3d at 708). On appeal, however, Benami asserts that the trial court erred by excluding the testimony of Fallis; Benami does not assert that the trial court erred by not granting a continuance.[21] Thus, in my view, it would have come down to *Heath*: "While exclusion was not the only remedy available to the trial court, it was not a remedy that was beyond the trial court's discretion to impose." *Heath*, 696 S.W.3d at 708.

Jeff Rambin
Justice

Date Submitted:     July 2, 2025
Date Decided:       October 15, 2025

Do Not Publish

---

[21]Benami notes that he did request a continuance in the trial court, but he does not tie that fact to a request in the court of appeals. Nor did Benami brief whether "the formal requirements for a continuance were met" as discussed in *Heath*. *Heath*, 696 S.W.3d at 708.

21